549 P.2d 277

**STATE of New Mexico, Petitioner,**

v.

**Jackie ROBINSON, Santos Perez, Placido Perez, Barbara Garcia, Danny Alderette, Candelario Baca, Respondents.**

No. 10837.

Supreme Court of New Mexico.

April 27, 1976.

James L. Brandenburg, Dist. Atty., James F. Blackmer, Asst. Dist. Atty., Albuquerque, for petitioner.

Sarah M. Singleton, Santa Fe, John W. Boyd, Charles R. Finley, George H. Farrah, III, Farrell Lines, Joseph M. Fine, James R. Beam, Albuquerque, for respondents.

## OPINION

McMANUS, Justice.

Defendants filed a motion requesting the state to identify and produce the confidential informant involved. It was agreed that the informant had arranged, participated in and witnessed the alleged narcotics transactions which formed the basis for the prosecution of the defendants. The trial judge held an *in camera* hearing during which he interviewed the informant. Following the hearing which was not transcribed, he found that the informant's testimony would not be relevant or helpful to the defense of any of the defendants nor necessary to a fair determination of the defendants' guilt or innocence. After such finding the trial court certified for interlocutory appeal its denial of the defense motion. The Court of Appeals remanded the case to the District Court for the court to hold another *in camera* hearing and submit the transcript thereof to the Court of Appeals. *State v. Robinson*, 88 N.M. ——, —— P.2d —— (Ct.App.1975). This was done. A second trial judge came up with the same result as the first one, i. e., a refusal to disclose the identity of the informant. On February 10, 1976, the Court of Appeals issued its opinion concluding that the informer could supply

testimony that is "necessary to a fair determination of the issue of guilt or innocence" and reversed the decision of the trial court. *State v. Robinson*, 88 N.M. —, — P.2d — (Ct.App.1976). The matter reaches us on a petition for writ of certiorari.

■ The state's petition for the writ presented the following questions for review:

"I. When an informant and a police officer are mutual witnesses to criminal conduct resulting in criminal charges, are the informer privilege and *in camera* interview of informant [Rule 510(c)(2) of the New Mexico Rules of Evidence] rendered inapplicable, and/or mandating *per se* the disclosure of the identity of the informant?

"II. When Appellants raised only the issue of unconstitutionality or inapplicability of the rule 510 informer privilege and the *in camera* interview of an informant by a district judge, did the Court of Appeals exceed its jurisdiction by *sua sponte* remanding the appeal for a transcript of *in camera* hearing, and then reviewing *de novo* the validity of the District Judge's ruling refusing to disclose informant identity?

III. Aside from the specific provisions of Rule 510(b), what circumstances render the informer's privilege per se inapplicable, and the identity of a confidential informant required to be disclosed (A.) prior to or without an in camera interview of the informant, and (B.) after an in camera hearing?

"IV. Aside from the provisions of Rule 510 of the New Mexico Rules of Evidence governing the informer's privilege, what procedures should a trial judge follow in ordering, conducting, and following an *in camera* hearing/interview with an informant, and deciding whether to order the prosecution to reveal the identity of its informant?"

While we will not attempt to answer each of these four questions specifically,

we believe that the conclusion which we reach sufficiently answers the principal issues raised by them.

Rule 510 of the New Mexico Rules of Evidence establishes the privilege of the state to refuse to disclose an informant's identity but subsection (c)(2) of the Rule provides the following exception to that privilege:

(c) EXCEPTIONS:

\* \* \* \* \* \*

(2) *Testimony on Merits.* If it appears from the evidence in the case or from other showing by a party *that an informer will be able to give testimony that is relevant and helpful to the defense of an accused, or is necessary to a fair determination of the issue of guilt or innocence in a criminal case* or of a material issue on the merits in a civil case to which the state or a subdivision thereof is a party, and the state or subdivision thereof invokes the privilege, the judge shall give the state or subdivision thereof an opportunity to show *in camera* facts relevant to determining whether the informer can, in fact, supply that testimony. The showing will ordinarily be in the form of affidavits, but the judge may direct that testimony be taken if he finds that the matter cannot be resolved satisfactorily upon affidavit. If the judge finds that there is a reasonable probability that the informer can give the testimony, and the state or subdivision thereof elects not to disclose his identity, the judge on motion of the defendant in a criminal case shall dismiss the charges to which the testimony would relate, and the judge may do so on his own motion. In civil cases, he may make any order that justice requires. Evidence submitted to the judge shall be sealed and preserved to be made available to the appellate court in the event of an appeal, and the contents shall not otherwise be revealed without an order of the court. All counsel shall be permitted to be present at any stage at

which counsel for any party is permitted to be present." (emphasis added).

In the case before us the informant in his testimony in the *in camera* hearing did not contradict nor vary the police offense reports which were made part of the record in the case before the Court of Appeals. There was no showing in any of the courts involved in this matter, that the informant's disclosure would be relevant or helpful to the defense, or necessary to a fair determination of the guilt or innocence involved.

The case of *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), is used to bolster the defendants' cause herein. However, in *Roviaro* the Government's informer was the sole participant, other than the accused, in the transaction charged. The informer was the only witness in a position to amplify or contradict the testimony of Government witnesses. In the case before us agent Vigil was the dominant moving party in the transactions, not the informer. The *Roviaro* case did set forth the following observation:

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Id. at 62, 77 S.Ct. at 628.

In an attempt to apply the "balancing" test to the case before it, the Court of Appeals for the Tenth Circuit concluded in *United States v. Martinez*, 487 F.2d 973 (10th Cir. 1973) that:

"* * * [W]hen, as here, the informer introduced the undercover agent to the accused's co-defendant and was present when the sale was consummated, then the testimony of the informer is relevant and the 'balancing' test in such circumstances dictates a disclosure of the identity of the Government's informer."

The New Mexico Court of Appeals adopted this reasoning in its opinion. We disagree. We do not believe this position is in accordance with *Roviaro v. United States*, supra. While *Roviaro* warns against a fixed rule with respect to the disclosure of an informer's identity, *United States v. Martinez*, supra, and the New Mexico Court of Appeals' opinion attempt to formulate one.

While we are cognizant of the respondents' need for disclosure of all relevant, helpful or necessary evidence, we are equally aware of the state's need for reliable, confidential informants, especially in the enforcement of narcotics laws. To require the state to reveal the informer's identity in every instance where that person has witnessed and helped arrange the drug transaction, without first determining whether the informer's testimony will be at all relevant or necessary to the defense, would unreasonably cripple the state's efforts at drug law enforcement.

Our evidentiary Rule 510 provides a systematic method for balancing the state's interest in protecting the flow of information against the individual's right to prepare his defense. It gives the trial court the opportunity to determine through an *in camera* hearing whether the identity of the informer must be disclosed or not. Where it appears that the informer's testimony will be relevant and helpful to the defense of an accused, or necessary to a fair determination of the issue of guilt or innocence, then the trial judge can order the state to either reveal the identity of the informer or suffer a dismissal of the charges to which the testimony would relate. On the other hand, where it appears to the trial judge from the evidence that the informer's testimony will not be rele-

vant and helpful to an accused's defense, or necessary to a fair determination of the issue of guilt or innocence, then the identity of the informer can remain undisclosed, and that person is not exposed unnecessarily to the highly dangerous position of being a known informant. Our only concern upon appellate review of the trial court's determination is to insure that it did not abuse its discretion in this matter.

Respondents argue that the *in camera* method of determining the relevancy and necessity of the informer's probable testimony conflicts with *Jencks v. United States*, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed. 2d 1103 (1957). In *Jencks* the trial court had denied defendant's request that the Government be required to produce certain confidential F.B.I. reports for inspection and use by the defense in cross-examining the two prosecution witnesses who had made the reports. The Court of Appeals affirmed on the ground that the defendant had not established any inconsistency between the reports and the witnesses' trial testimony. The Supreme Court held that the defendant was entitled to inspect the reports without any prior showing of inconsistency. The Supreme Court also concluded that:

> "The practice of producing government documents to the trial judge for his determination of relevancy and materiality, without hearing the accused, is disapproved. Relevancy and materiality for the purposes of production and inspection, are established when the reports are shown to relate to the testimony of the witness. Only after inspection of the reports by the accused, must the trial judge determine admissibility—*e. g.*, evidentiary questions of inconsistency, materiality and relevancy—of the contents and the method to be employed for the elimination of parts immaterial or irrelevant." Id. at 669, 77 S.Ct. at 1014 (footnote and citation omitted).

Mr. Justice Burton, who had authored *Roviaro,* and Mr. Justice Harlan concurred in the result in *Jencks* but argued that before disclosing the privileged material to the defendant, the trial court should examine *in camera* the portions claimed to be privileged to determine their relevancy to the defendant's case. In this way:

> "The trial judge exercises his discretion with knowledge of the issues involved in the case, the nature and importance of the Government's interest in maintaining secrecy, and the defendant's need for disclosure. By vesting this discretion in the trial judge, the conflicting interests are balanced, and a just decision is reached in the individual case without needless sacrifice of important public interests." Id. at 677, 77 S.Ct. at 1018 (footnote omitted).

The *Jencks* decision resulted in legislation, popularly known as the Jencks Act, which adopts much of the Court's decision, but, in line with Mr. Justice Burton's reasoning, allows the trial court to determine through an *in camera* inspection of the confidential statement or report made by a Government witness whether it contains material which does not relate to the subject matter of the witness' testimony. If such extraneous material is found by the court, it can be excised before being shown to the defendant. The defendant may appeal this decision by the trial court to excise certain portions, in which case the entire statement or report, including the deleted material, is made available to the appellate court for determining the correctness of the trial court's ruling. 18 U.S.C. § 3500(c) (1970). We are, therefore, not persuaded that the *Jencks* case requires the trial court to order the disclosure of an informer's identity to the defense without first making an *in camera* determination of the necessity for disclosure.

We are further persuaded that the *in camera* method accords with *Roviaro* since our Rule 510 is quite similar to Rule 510 of the proposed Federal Rules of Evidence, which were submitted to Congress in No-

vember, 1972, by the United States Supreme Court.[1] In fact, our Rule requires the trial court to order the disclosure of the informer's identity if his testimony will be relevant and helpful to the defense of an accused, *or* necessary to a fair determination of the issue of guilt or innocence, while the proposed federal Rule only requires disclosure if the testimony is necessary. See 56 F.R.D. 183, 255–58 (1973).

Significantly, the court in *United States v. Martinez,* supra, retreated slightly from the seemingly rigid rule quoted above when it stated that "[t]hough the trial court erred in refusing to require the Government to identify its informer, it does not necessarily follow that Martinez is entitled to a new trial." The case was remanded to the United States District Court for the District of New Mexico for further proceedings to require the Government to identify the informer and then to determine whether the informer's testimony would be favorable to Martinez or not. If the trial court determined that the informer's testimony would be favorable, then Martinez was to be granted a new trial. Otherwise, the original judgment and sentence were to stand. Upon rehearing, the Court of Appeals modified its opinion to allow the trial court to make this determination through an *in camera* proceeding. In short, the Court of Appeals ultimately adopted a method quite similar to the one outlined in our Rule 510 for determining whether an informer's identity should be disclosed or not. See also *United States v. Jackson,* 384 F.2d 825 (3d Cir. 1967), cert. denied, 392 U.S.

932–33, 88 S.Ct. 2292, 20 L.Ed.2d 1390 (1968) and *United States v. Day,* 384 F.2d 464 (3d Cir. 1967), both of which were cited in the advisory committee's note to proposed federal Rule 510 for the proposition that a hearing *in camera* provides an accommodation, in harmony with *Roviaro,* of the conflicting interests. Cf. *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), which held that a trial court has no absolute constitutional duty to require disclosure at a pretrial suppression hearing of the identity of a reliable informer whose information had given police probable cause for a warrantless arrest and incidental search.

■ In the case before us, two trial judges held separate *in camera* hearings. Both concluded that, based upon the particular circumstances of this case, the state should not be required to disclose the informer's identity, since his testimony would not be relevant and helpful to the defense of the accused, or necessary to a fair determination of the issue of their guilt or innocence. We have reviewed the record, including the transcript of the second *in camera* proceeding and conclude that the trial court was correct and clearly did not abuse its discretion.

Accordingly, the decision of the Court of Appeals is reversed, the decision of the trial court is affirmed, and this case is remanded so that the trial of these defendants can continue.

IT IS SO ORDERED.

OMAN, C. J., and STEPHENSON, MONTOYA and SOSA, JJ., concur.

---

1. Congress did not adopt any of the proposed evidentiary privilege rules, including Rule 510. Instead, Congress substituted Rule 501 in the Federal Rules of Evidence, which states that except as otherwise specifically provided the privilege of a witness, person, government, state or political subdivision to decline to give evidence which is otherwise relevant, material and probative shall be governed by common law principles as they may be interpreted by the courts of the United States in the light of reason and experience.