625 P.2d 588

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Robert Gutierrez HINOJOS,
Defendant-Appellant.**

**No. 4299.**

Court of Appeals of New Mexico.

June 3, 1980.

John B. Bigelow, Chief Public Defender, Martha A. Daly, Asst. Appellate Defender, Sante Fe, for appellant.

Jeff Bingaman, Atty. Gen., James F. Blackmer, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

WALTERS, Judge.

Convicted and sentenced for trafficking in heroin and conspiracy to traffic, defendant appeals. He contends error in (1) improper limitation of his cross-examination of an informer, the State's principal witness; (2) improper communication between the court and jury in the absence of defendant; and (3) exclusion of evidence of the informer's character and conduct. We affirm.

We dispose of defendant's second and third points first. With respect to the communications complained of, the record discloses that on the first occasion the court and both counsel developed the proper responses to the jury's questions and the bailiff delivered those answers to the jury. No objection was made to that procedure. A second note from the jury was also answered, although the record does not reveal the procedure followed in doing so. Defense counsel likewise did not object to the manner of answering the jury's second inquiry, and no issue of improper communications with the jury was raised in the docketing statement.

New Mexico frequently has condemned the practice of the trial court communicating with the jury outside the presence of the defendant, *see State v. Saavedra*, 92 N.M. 242, 599 P.2d 395 (Ct.App. 1979), and cases cited therein. When defendant's absence is shown, there arises a presumption of prejudice which the State has the burden to overcome. *State v. Orona*, 92 N.M. 450, 589 P.2d 1041 (1979); *State v. McClure*, 94 N.M. 440, 612 P.2d 232 (Ct. App.), filed May 13, 1980. However, the affidavit obtained from counsel who defended at trial, in support of appellant's motion to supplement the record, falls far short of establishing defendant's absence at the time the answers to the jury were formulated and sent back to the jury. *State v. Cranford*, 92 N.M. 5, 582 P.2d 382 (1978), imposes upon defendant the obligation of preserving error, if error be committed, by objecting to the procedure and "see[ing] to it that the record affirmatively shows that the defendant was not present." 92 N.M. at 7, 582 P.2d 382.

We conclude that there is nothing which this Court may review on the issue raised, defendant having failed to "make his record" on this matter. *Orona, supra.*

The defense proffered testimony of the informant's former attorney, which the trial court denied. The information which the defense sought to introduce concerned the informant's admission of his intent to suborn perjury in another trial in which the informant was the accused. The court held that testimony of that communication to the witness's former attorney would violate the attorney-client privilege, and ruled it inadmissible.

The trial court was correct for three reasons: (1) Rule 503, N.M.R.Evid. 1978, establishes the attorney-client privilege and none of the exceptions under subsection (d) ap-

ply. (2) Extrinsic evidence may not be used to prove specific instances of conduct which attack a witness's credibility. Rule 609(b), N.M.R.Evid. 1978. (3) There was opinion or reputation evidence admitted regarding the informant's reputation for truthfulness, and the former attorney's evidence properly could have been excluded as cumulative under Evidence Rule 403.

Defendant's main point on appeal concerns Rule 510, N.M.R.Evid. 1978, which grants a privilege to the State to refuse to disclose the identity of an informer, unless the informer appears as a witness for the State. Rule 510(c)(1). In the instant case, the informer was called by the State as its principal witness and extensively examined regarding his substantial past criminal history before he was questioned about the crimes with which defendant was accused of committing. The first questions to him on cross-examination were:

Q. Mr. Bustamonte, what name are you going by these days?

A. These days? William Abel Castillo Bustamonte.

Q. Is that the name that you're known by in Arizona?

A. I'm afraid that I can't answer that question.

The State sought a ruling from the trial court that the informer need not answer the question and, out of the presence of the jury, advised the court and offered to tender testimony of the witness regarding the likely physical dangers to the informer as well as the destruction of his usefulness to law enforcement officers if his current alias(es) were required to be revealed. The trial court agreed. Without objection to the court's ruling, or a request for mistrial, defense counsel resumed cross-examination and developed the following regarding the informer's identity:

Q. How many different names have you used in your lifetime?

A. About 15,000.

Q. About 50,000 names?

A. Probably.

   \*     \*     \*     \*     \*     \*

Q. When you are undercover as an informant with DEA, do you use all the names you can?

A. Yes.

Q. Do you consider that your job?

A. No.

Q. How do you consider that?

A. As a duty.

   \*     \*     \*     \*     \*     \*

Q. Where you are living in Arizona now, you don't use the name Willie Bustamonte, is that right?

A. Yes, I do.

Q. So in your undercover capacity, you would use your name Willie Bustamonte?

A. It would depend on the situation.

Q. Within the past year, have you used another alias besides Willie Bustamonte?

A. Yes.

Q. How many times?

A. Once.

Q. When you work for DEA as an informant, do you take on a different identity?

A. If necessary.

Q. What does that involve, taking on another identity?

A. Just telling your seller you're somebody else.

On redirect, the informer testified at length to the various aliases he had used as an informer. He said that William Castillo Abel Bustamonte was his true name. It was the name under which all of his admitted convictions were had, and the name he gave in his testimony here.

Defendant relies on *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968), and *Alford v. United States*, 288 U.S. 687, 51 S.Ct. 218, 75 L.Ed.2d 624 (1931), to urge that it was reversible error to deny him the right to learn the alias Bustamonte was using in his Arizona undercover work. In analyzing the *Alford* and *Smith* cases, we think there are substantial disparities which account for those decisions vis-a-vis our disposition of the issue in this case.

In *Smith*, the informer was not required to give either his real name or his address after he had admitted using an alias in identifying himself on the witness stand. The Supreme Court held this error, declaring at 390 U.S. 133, 88 S.Ct. at 750 that * * * [W]hen the credibility of a witness is in issue, the very starting point in "exposing falsehood and bringing out the truth" through cross examination must necessarily be to ask the witness who he is and where he lives. The witness's name and address open countless avenues of in court examination and out of court investigation.

In *Alford*, the defendant was confronted by an informer whose address was excluded, and thus defendant could not identify either the witness's occupation or his home neighborhood. The defense argued it had information that the witness was under some form of detention by federal authorities, and it was precluded from inquiring into the possibility of coerced testimony by reason of the informer's detention and jail residence. In reversing, the Court said that cross-examination to place the witness in his environment was essential "so that independent testimony may be sought and offered of his reputation for veracity in his own neighborhood . . . that the jury may interpret his testimony in the light reflected upon it by knowledge of his environment . . . and that facts may be brought out to discredit the witness by showing that his testimony in chief was untrue or biased." 282 U.S. at 691, 51 S.Ct. at 219.

█ Bustamonte was never asked what his address was, and there is no contention that he gave a false name while testifying. He was asked to tell what *alias* he was using in Arizona at the time of trial, sixteen to twenty months after the commission of the alleged offenses by defendant. But, with the exception of that specific information, the witness's "environment" as an almost-perpetual convict and ex-convict for approximately twenty years, an admitted heroin-user, a long-time informant who occasionally "welched" on his arrangements with the DEA and failed to report his in-

come to the IRS, his use of fifteen to fifty thousand aliases, was well-explored and apparent to the jury.

Evidence Rule 510 withdraws the privilege of refusing to disclose the *identity* of the informer when he is called as a prosecution witness. The Supreme Court decisions relied on are concerned with allowance of cross-examination which promotes the opportunity for defendant to develop facts relevant to contradiction or impeachment of the informer, rather than with application of an evidentiary rule. If we apply the Supreme Court's reasoning, however, we cannot agree that defendant was deprived of bringing the witness's background before the jury for the purpose of discrediting his testimony. In addition to the far-ranging questions on examination, cross-examination, and redirect examination, defendant was granted the right to interview the informer at least ten days before trial, and failing that, was authorized to move for the informer's deposition. The opportunities to develop facts relevant to impeachment were not denied to defendant.

█ Additionally, since the informer's true identity was revealed and only a current *alias* was withheld, we believe the trial court's ruling of non-disclosure of the alias because of the danger to the informant falls within the reasons given in *State v. Robinson*, 89 N.M. 199, 549 P.2d 277 (1976), for so ruling. The court there said, at 89 N.M. 201–202, 549 P.2d 277:

* * * [W]here it appears to the trial judge from the evidence that the informer's testimony will not be relevant and helpful to an accused's defense, or necessary to a fair determination of the issue of guilt or innocence, then the identity of the informer can remain undisclosed, and that person is not exposed unnecessarily to the highly dangerous position of being a known informant. Our only concern upon appellate review of the trial court's determination is to insure that it did not abuse its discretion in this matter.

If an informer's true identity need not be disclosed in such circumstances, certainly an alias used long after the alleged event be-

ing testified to should not be required to be revealed, and especially is this so when an abundance of background information has been made available to the defense. The trial court conscientiously took the defense argument for disclosure under advisement overnight and stated for the record, following additional argument the following morning, that the court had engaged in "a balancing process" and would not require the informer to disclose his current undercover name.

Our review of this record persuades us that the trial court clearly did not abuse its discretion in disallowing evidence of an alias used once by the informer in the preceding year. His true identity was never withheld; his "environment" over a 20-year period was thoroughly exposed and explored.

The convictions and judgment are affirmed.

ANDREWS, J., concurs.

LOPEZ, J., dissents.

LOPEZ, Judge (dissenting).

I dissent.

I believe this case should be reversed because, in the absence of actual threats to the informer, the court below improperly used a balancing test to determine whether or not his identity should be disclosed. The New Mexico Rules of Evidence state unambiguously that no privilege applies when an informer takes the stand as a witness for the state. *State v. Robinson, supra,* cited in the majority opinion as authorizing a balancing test, did not involve an informer who took the stand, and is therefore not precedent for us in this case.

The New Mexico Rules of Evidence state very clearly that an informer who testifies for the state cannot refuse to disclose *any matter.* The pertinent rules are N.M.R. Evid. 501 and 510, N.M.S.A. 1978 which read as follows:

Rule 501. *Privileges recognized only as provided.*

Except as otherwise required by constitution, and except as provided in these rules or in other rules adopted by the supreme court, no person has a privilege to:

\* \* \* \* \* \*

(2) refuse to disclose any matter;

\* \* \* \* \* \*

Rule 510. *Identity of informer.*

(a) *Rule of privilege.* The United States or a state or subdivision thereof has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a law enforcement officer \* \* \*

\* \* \* \* \* \*

(c) *Exceptions;*

(1) *Voluntary disclosure; informer a witness.* No privilege exists under this rule ... if the informer appears as a witness for the state.

\* \* \* \* \* \*

N.M.Rule 510 was adopted from Rule 510 of the Proposed Federal Rules of Evidence.[1] The proposed Federal Rule required the government to choose between putting its informer on the witness stand, where his identity would be revealed, and protecting his identity by not having him testify. 2 Weinstein, Evidence ¶ 510[06] (1979).[2] Un-

---

1. New Mexico Committee Commentary for the Rules of Evidence. For text of the proposed Federal Rule 510, see 2 Weinstein, Evidence ʻ 510 (1979). Rule 510 was never adopted by Congress as it was felt that the best way to deal with the problem of privilege was through case law. S.Rep.No. 93–1277, 93rd Cong., 2nd Sess. 6 *reprinted in* [1974] U.S.Code Cong. & Ad.News 7051, 7053.

2. That this was the plain import of subsection (c)(1) was recognized by the United States De-

partment of Justice which criticized the proposed rule, writing:

*Problem:* Under proposed Rule 510(c)(1), the privilege would be lost if the informer appears as a witness even if called by the defendant. In our view the privilege should be lost only if the informer is called *by the Government.*

Department of Justice, Report, 33 (1971), *quoted in* Weinstein, *supra* at 510–12. The draft of

der the New Mexico Rules of Evidence, an informer who testifies for the State is not protected by the informer's privilege. The trial court's failure to allow defendant to question Bustamonte concerning his current name and address was error. To be reversible, however, the error must be prejudicial. *State v. Wright*, 84 N.M. 3, 498 P.2d 695 (Ct.App.1972).

Two United States Supreme Court cases have held that a defendant has a right derived from the 6th and 14th amendments to the Constitution to cross-examine an informer who testifies against him as to his name and address. *Smith, supra*, (name and address); *Alford, supra*, (address). *Smith*, which, like the case before us, involved an addict-informer who testified about his alleged illegal purchase of narcotics, stands for the proposition that when the credibility of a witness is at issue, the very starting point in exposing falsehood through cross-examination must be to ask the witness who he is and where he lives. *Smith* is also similar to the case before us in that the police officers involved in the undercover sale could not corroborate essential aspects of the informer's testimony. Consequently, the issue of the informer's credibility was critical at that trial, as it is in this one.

A subsequent federal case somewhat modified the position of *Alford* and *Smith* by holding that where there is a threat to the life of the witness, the right of the defendant to cross-examine him as to his true name, address, and place of employment is not absolute; but the threat to the life of the witness must be actual, not conjectural. *United States v. Palermo*, 410 F.2d 468 (7th Cir. 1969) *see, United States v. Varelli*, 407 F.2d 735 (7th Cir. 1969). Following the *Palermo* reasoning, state and federal courts have ruled that where the informer is an important government witness whose credibility is in issue, the name

and address of the informer cannot be withheld on cross-examination, unless actual threats have been made against the witness. *People v. Hall*, 117 Ill.App.2d 116, 253 N.E.2d 890 (1969) (address); *State v. Hassberger*, 350 So.2d 1 (Fla.1977) (name and address); *see, United States v. Garafolo*, 385 F.2d 200 (7th Cir. 1967), *opinion vacated*, 390 U.S. 144, 88 S.Ct. 841, 19 L.Ed.2d 970 (1968), *rev'd*, 396 F.2d 952 (1968) (court first held that failure of the lower court to require informer-witness to give his address at the time of trial was not error, but opinion was vacated by United States Supreme Court in light of *Smith* and court then reversed itself). At least one court has gone beyond *Palermo* and required the witness to identify herself at trial although evidence was presented that her life was in danger and that revealing her identity would enhance the danger. *People v. Brandow*, 12 Cal.App.3d 749, 90 Cal.Rptr. 891 (1970) (name).

Other courts have interpreted the reasoning of *Smith/Alford* cases differently. *People v. Pleasant*, 69 Mich.App. 322, 244 N.W.2d 464 (1976); *United States v. Smaldone*, 484 F.2d 311 (10th Cir. 1973) *cert. denied*, 415 U.S. 915, 94 S.Ct. 1411, 39 L.Ed.2d 469 (1974); *United States v. Alston*, 460 F.2d 48 (5th Cir.) *cert. denied*, 409 U.S. 871, 93 S.Ct. 200, 34 L.Ed.2d 122 (1972). By this reasoning, the factor which determines whether or not the informer-witness must reveal information concerning his present location is not whether his life is actually in danger, but whether the defendant, through other questions has been given sufficient opportunity to place the witness in his environment. *Alston*. Under *Palermo*, the *government* has to present evidence of specific threats to the witness in order to persuade the court that his current identity and address should *not* be revealed; under *Alston*, once general danger to the witness has been alleged by the government, the

---

the rule that the Department was criticizing excepted every informer who was called as a witness by either party from the informer's privilege. *Id.* at 510–8. The Supreme Court subsequently narrowed the (c)(1) exception to only those informers who appeared as witnesses for the government. *Id.* at 510–17. The New Mexico Rule follows this later draft by requiring that the informer's identity to be revealed only when the informer appears as a witness "for the state". N.M.R.Evid. 510(c)(1), N.M.S.A.1978.

*defendant*, must show that he needs that information to properly place the witness in his environment in order to persuade the court to order the identity revealed.

I believe the *Palermo* reasoning should be followed when the informer is the State's chief witness. Because the whole case hinges on the informer's credibility, no privilege should attach to him unless the prosecution can show specific threats to his life which require the court to protect the witness' identity for his own safety. Any lesser standard is an abridgement of the defendants constitutional right, set out in the 6th and 14th amendments, to confront the witness against him. As the Supreme Court stated in *Smith*:

> [W]hen the credibility of a witness is in issue, the very starting point in "exposing falsehood and bringing out the truth" through cross-examination must necessarily be to ask the witness who he is and where he lives.

390 U.S. at 131, 88 S.Ct. at 749. The essence of a fair trial is that the cross-examiner be given reasonable latitude, even though he is unable to state what facts a reasonable cross-examination might develop. *Alford*. We cannot know what other information might have come to light had the defense been able to learn of Bustamonte's current alias.

> [T]he art of cross-examination for impeachment purposes is invaluable in a search for the truth. It is a cornerstone in the trial of a case. A cornerstone is a large stone laid at the base of a building to strengthen the two walls forming a right angle. In figurative use, it unites the jury and the trial to assure the fair administration of justice in the courts. The jury should have the assurance that

the doors that may lead to the truth have been unlocked.

*Valles v. State*, 90 N.M. 347, 354, 563 P.2d 610, 617 (Ct.App.) (Sutin, J., concurring), *cert. denied*, 90 N.M. 637, 567 P.2d 486 (1977). When the jury's decision of guilt or innocence may hinge on the credibility of a witness, the defendant must be allowed extensive and *complete* cross-examination of that witness, absent a showing of actual danger to the witness. In that event, the witness may conceal his current identity. This standard for determining prejudicial error when the identity of a witness-informer is withheld is consistent with the United States Constitution, and the New Mexico Rules of Evidence.

*State v. Robinson, supra*, involved the interpretation of N.M.R.Evid. 510(c)(2), not (c)(1) as in the present case. Subsection (c)(2) pertains to the situation where the state, not planning to call the informer as a witness, does not want to reveal his identity to the defense. This is not the situation in the present case. Consequently, *Robinson* does not help me.

I note in passing that subsection (c)(2) requires the judge to dismiss the charge against the defendant if he has determined that the informer's testimony is necessary and the state still refuses to reveal his identity. The overall intent of Rule 510 appears to me to be that the informer's privilege does not apply when the informer becomes a witness. I would reverse.