895 P.2d 249

### STATE of New Mexico,
### Plaintiff–Appellee,

v.

### Lisa CHANDLER, Defendant–Appellant.

### No. 15342.

Court of Appeals of New Mexico.

March 23, 1995.

Certiorari Denied May 10, 1995.

Tom Udall, Atty. Gen., Ann M. Harvey, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Christopher Bulman, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

BLACK, Judge.

Information from a confidential informant led to the execution of a search warrant at a Silver City residence leased by Defendant. Police found substantial quantities of cocaine and marijuana, as well as numerous pieces of drug paraphernalia, in several locations throughout the residence. Defendant was convicted of trafficking a controlled substance by possession with intent to distribute and possession with intent to distribute marijuana, contrary to NMSA 1978, Sections 30–31–20(A)(3) and 30–31–22(A)(1) (Cum.Supp. 1994). On appeal, Defendant argues that: (1) her convictions are not supported by substantial evidence; (2) the district court abused its discretion in failing to hold an in camera hearing regarding the identity of the confidential informant; (3) the search warrant was based on stale information; (4) defense counsel's failure to challenge police procedures during the raid amounted to ineffective assistance of counsel; and (5) prosecutorial misconduct deprived her of a fair trial. We affirm.

### FACTS

On January 8, 1993, police executed a search warrant on the Silver City residence shared by Defendant and her boyfriend, Rick Gomez. The residence is a small house consisting of a living room, kitchen, bathroom, and closet. Gomez had moved into the residence approximately four to six weeks prior to the search.

At the time police entered the residence, four people were present: Defendant, Gomez, Luis Alcorta, and Yvette Chavez. Gomez was on his knees in front of the kitchen counter using a nickel to check the balance on a triple-beam scale. Defendant was sitting on the living room couch.

On the kitchen counter, police also found Gomez's wallet, which contained $320. In a cabinet located above the counter where Gomez was checking the scale, police found a

measuring cup containing two plastic baggies of cocaine with a combined weight of 3.72 grams. They also found fifty-five dollars in cash beside the measuring cup. On top of the kitchen cabinets, police discovered another scale and four cookie tins containing more than two pounds of marijuana.

In the living room, police found a red cedar box. The box contained, among other things, a bindle containing .17 grams of cocaine, a baggie and a cellophane cigarette wrapper containing .40 grams of marijuana, five marijuana roaches, two marijuana pipes, a cocaine sniffer, and a gram scale. In the living room closet, police discovered a fishing vest containing approximately forty-eight grams of cocaine. The vest also contained $1,480 in cash. Officer Heidke, who was in charge of the raid, testified that the vest belonged to Gomez. In the closet, police also found a magazine that had been cut up to make bindles for packaging small amounts of cocaine.

During the search, Gomez informed the police that the drugs in the house belonged to him. Alcorta claimed ownership of the triple-beam balance on the kitchen counter, although an engraving on the scale indicated that it was the property of Western New Mexico University.

## I. DEFENDANT'S CONVICTIONS ARE SUPPORTED BY SUBSTANTIAL EVIDENCE.

Following the State's case, Defendant moved for a directed verdict on each count. Defense counsel conceded that Defendant may have known about the drugs, but argued that the State had failed to show that Defendant exercised control over the larger quantities of marijuana and cocaine. The district court denied the motion. The jury convicted Defendant on both counts.

At the time of the raid, Defendant was sitting in the midst of a large cache of drugs and drug paraphernalia spread throughout the house. Defendant rented the premises and paid the utilities for what was, in effect, the "business office" of a drug distribution enterprise. In addition to providing this distribution center, Defendant's belongings were found in direct association with the drugs and drug paraphernalia. A complete inventory of the cedar box found in the living room showed that it contained: a bindle containing 0.17 grams of cocaine; a plastic bag and a cigarette wrapper, which together contained 0.41 grams of marijuana; five marijuana roaches; two marijuana pipes; a cocaine sniffer with a trace amount of cocaine; an empty plastic baggie; a video receipt signed by Gomez; a social security card in the name of Defendant's ex-husband; the torn corner of a plastic baggie containing a trace amount of cocaine; a gram scale; nail clippers; a lighter; a plastic container; three pairs of earrings, one with a matching pendant; and some spare change.

█ To establish that Defendant engaged in the trafficking prohibited by Section 30–31–20(A), the State was required to prove that Defendant had the cocaine in her possession, was aware that it was cocaine, and intended to transfer it to another. *See State v. Becerra*, 112 N.M. 604, 606, 817 P.2d 1246, 1248 (Ct.App.), *cert. denied*, 112 N.M. 440, 816 P.2d 509 (1991). Similarly, to obtain a conviction under Section 30–31–22(A), the State needed to establish that Defendant had the marijuana in her possession, knew or believed it to be marijuana, and intended to transfer it to another. SCRA 1986, 14–3104.

█ Proof of possession of illegal drugs may be established by circumstantial as well as direct evidence. *Becerra*, 112 N.M. at 607, 817 P.2d at 1249; *State v. Donaldson*, 100 N.M. 111, 119, 666 P.2d 1258, 1266 (Ct. App.), *cert. denied*, 100 N.M. 53, 665 P.2d 809 (1983). Possession may be actual or constructive. *State v. Brietag*, 108 N.M. 368, 370, 772 P.2d 898, 900 (Ct.App.1989). Constructive possession exists when a defendant has knowledge of and control over the drugs. *Id.* (citing *State v. Montoya*, 85 N.M. 126, 509 P.2d 893 (Ct.App.1973)). Such constructive possession need not be exclusive. *State v. Muniz*, 110 N.M. 799, 801–02, 800 P.2d 734, 736–37 (Ct.App.), *cert. denied*, 110 N.M. 749, 799 P.2d 1121 (1990); *United States v. Nelson*, 6 F.3d 1049, 1053 (4th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 2142, 128 L.Ed.2d 870 (1994). Constructive possession of sufficient quantities will sustain a convic-

tion of possession with intent to distribute. *See State v. Bankert,* 117 N.M. 614, 618–19, 875 P.2d 370, 374–75 (1994).

On appeal, Defendant argues that "[t]he evidence in this case may arguably show a rational connection between Ms. Chandler and the items seized (drugs were found in Chandler's house), and yet not prove Chandler's knowledge and intent to exercise dominion and control of those items beyond a reasonable doubt." She further argues that "[e]ven if the evidence showed [that] Chandler knew of Gomez' trafficking and was a drug user herself, the State has not proven the offense charged, that Chandler was herself a trafficker. The evidence simply raises the possibility." (Citation omitted.) We believe that the evidence was sufficient to allow the jury to find guilt beyond a reasonable doubt with respect to every essential element of each crime. *See id.* at 617–18, 875 P.2d at 373–74.

Convictions for trafficking by possession have been affirmed on analogous facts in other jurisdictions. *See, e.g., United States v. Morrison,* 991 F.2d 112 (4th Cir.), *cert. denied,* ___ U.S. ___, 114 S.Ct. 225, 126 L.Ed.2d 180 (1993); *State v. King,* 99 N.C.App. 283, 393 S.E.2d 152 (1990); *cf. Brown v. State,* 428 So.2d 250 (Fla.) (affirming conviction of simple possession on analogous facts), *cert. denied,* 463 U.S. 1209, 103 S.Ct. 3541, 77 L.Ed.2d 1391 (1983). In *United States v. Davis,* 562 F.2d 681 (D.C.Cir. 1977) (per curiam), the court considered the proper role of an appellate court in evaluating whether similar circumstantial evidence could support a conviction of possession with intent to distribute. Davis lived in an apartment with two friends, one of whom was also his cousin. *Id.* at 686. The three split the rent, and each had a key. *Id.* Forty-eight baggies of marijuana and various quantities of LSD, hashish, cocaine, phendimetrazine, and phenmetrazine, along with scales and a marijuana gin, were found in the apartment. *Id.* at 684–85. At the time of the raid, Davis and one of his roommates were present, but it was the roommate who disclosed the location of large quantities of drugs to the police. *Id.*

In a per curiam opinion, joined by retired United States Supreme Court Justice Clark, the *Davis* majority outlined the proper type of evidence required to raise a jury question as to whether a defendant intended to distribute the drugs:

> There is no requirement that the government prove that any particular accused possessor intended *personally* to distribute or dispense. The offense is *"possess[ion]* with intent to ... distribute, or dispense". 21 U.S.C. § 841(a) (emphasis added). Possession with the requisite intent may be shown by facts other than an intent *personally* to distribute....
>
> Who the actual distributors or dispensers might turn out to be is not important— what is plain from the evidence is that those who possessed the drugs—and Davis was one of those—clearly intended that the drugs would be dispensed or distributed. Also, from all of this evidence the jury could, and obviously did, find that Davis, from his physical presence in the apartment and his relation to it and its contents, intended to exercise dominion and control over the drugs. On appeal that finding must be credited by the court.

*Davis,* 562 F.2d at 686 n. 5 (alterations in original).

The *Davis* majority then dealt with the jury's role in evaluating the defense that the drugs belonged to Davis' roommate:

> To assert that one can divest himself of constructive possession by treating the drugs as belonging to a roommate and having no intent of exercising dominion and control over the drugs may have some force as an abstract proposition; but the jury were free to find to the contrary on the evidence here.

*Id.* at 687 n. 6. The majority pointed out that, although each defendant testified that the drugs belonged to the other defendants, or even a fourth person, "[j]uries may use their common sense to look through testimony and draw inferences from all the surrounding circumstances that may conflict with specific statements." *Id.* at 688. The court affirmed the jury's findings:

> Given the joint-participation between appellant and his codefendants in leasing the

apartment, the substantial size and nature of the apparent drug activities and their extensive presence throughout the apartment and appellant's physical presence surrounded by contraband substances, we conclude that the jury was perfectly within the law in finding that appellant possessed the drugs in question.

Many of the same factors lead us to reject the dissent's conclusion that appellant was not shown to share his codefendants' intent to distribute the drugs. The jury could reasonably conclude from the joint participation of the defendants in the lease of the apartment, and the testimony as to their actual physical presence when arrested and at other times, that they all harbored the same intent.

*Id.* at 689–90 (footnote omitted).

■ Although the majority and dissent in *Davis* may appear to part company on the applicability of the circumstantial evidence rule, our Supreme Court recently explained that the circumstantial evidence rule does not mean anything different than that " 'the evidence supporting the verdict [must] provide a sufficient basis upon which to infer guilt beyond a reasonable doubt.' " *State v. Apodaca*, 118 N.M. 762, 766, 887 P.2d 756, 760 (1994) (quoting *State v. Vigil*, 110 N.M. 254, 256, 794 P.2d 728, 730 (1990)) (alteration in original). This statement is consistent with a long line of our cases in which we have said that the circumstantial evidence rule is not a concept independent of the substantial evidence inquiry, *State v. Madrid*, 83 N.M. 603, 605, 495 P.2d 383, 385 (Ct.App.1972), and that the jury, by its verdict, has necessarily found the hypothesis of guilt more reasonable than any of the theories of innocence advanced by the defendant. *State v. Hubbard*, 113 N.M. 538, 540, 828 P.2d 971, 973 (Ct.App.), *cert. denied*, 113 N.M. 352, 826 P.2d 573 (1992). Thus, we evaluate whether substantial evidence supports the verdict of guilt beyond a reasonable doubt.

■ In the instant case, Defendant relies on *Brietag* to support her argument that the evidence presented does not support constructive possession. In *Brietag*, as in the present case, police found drugs and drug paraphernalia in a house rented to the defendant. *Brietag*, 108 N.M. 368–69, 772 P.2d at 898–99. Unlike the present case, however, Brietag was not present at the house at the time of the raid, and it was unclear from prior police surveillance whether Brietag actually lived there. *Id.* at 369, 772 P.2d at 899. The police surveillance in *Brietag* also indicated that numerous other people frequented the house. *Id.* Moreover, and also unlike the present case, none of Brietag's possessions were found in close association with the drugs or drug paraphernalia. *See id.* Indeed, in *Brietag* we specifically recognized that, "[w]here drugs are found on premises that a defendant does not exclusively possess, the fact that they are found in close proximity to his personal belongings may be a circumstance sufficient to link him with the possession of those drugs." *Id.* at 370, 772 P.2d at 900.

■ Defendant also relies on *State v. Sizemore*, 115 N.M. 753, 858 P.2d 420 (Ct.App.), *cert. denied*, 115 N.M. 709, 858 P.2d 85 (1993). We again believe such reliance to be misplaced. There was much more evidence in this case connecting Defendant to the illicit enterprise than there was in *Sizemore*. Whereas Sizemore was a mere passenger in a car in which some goods were found and the occupant of a room in which other goods were hidden, Defendant here was, as we have said, the owner of the premises from which the illicit business enterprise was carried out—in her presence and within her view. Also unlike *Sizemore*, there can be no argument that Defendant believed the sale of illegal drugs to be innocent.

We therefore conclude that Defendant's convictions for possession with intent to distribute are supported by substantial evidence.

II. *THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DENYING AN IN CAMERA HEARING ON THE IDENTITY OF THE CONFIDENTIAL INFORMANT.*

The affidavit submitted in support of the search warrant in this case included a statement that the affiant, a police officer, had met with a reliable confidential informant

who told the officer that he had seen a large quantity of cocaine and a person known as "Ricky" selling cocaine at Defendant's Silver City residence.

Defendant moved the district court pursuant to SCRA 1986, 11–510 (Repl.1994) to order the disclosure of the identity of the confidential informant referred to in the affidavit in support of the search warrant. The district court concluded that the identity of the informant was not relevant, because Defendant was not charged with a crime based upon the transaction witnessed by the informant, but rather upon evidence found during the execution of the search warrant. Defendant challenges the district court's denial of her motion and its decision not to even hold an in camera hearing to evaluate her request for disclosure.

■ An appellate court reviews a district court's decision denying the disclosure of a confidential informant's identity for an abuse of discretion. *See State v. Robinson*, 89 N.M. 199, 202, 549 P.2d 277, 280 (1976). An abuse of discretion is defined as a decision that is "clearly against the logic and effect of the facts and circumstances before the court." *State v. Lucero*, 98 N.M. 311, 314, 648 P.2d 350, 353 (Ct.App.), *cert. denied*, 98 N.M. 336, 648 P.2d 794 (1982).

■ As in *State v. Lovato*, 117 N.M. 68, 70, 868 P.2d 1293, 1295 (Ct.App.1993), *cert. denied*, 117 N.M. 121, 869 P.2d 820 (1994), the charge against Defendant in the instant case is not based upon anything witnessed by the confidential informant, but rather upon the police officers' observations and what they found during their search. In district court, Defendant argued that the confidential informant could have testified that Defendant was not involved in the drug purchase witnessed by the informant. She maintains that this testimony would support her contention that Gomez alone was trafficking drugs from her house. Yet, even if it could be shown that Defendant was not present or had not participated in the sale of drugs on a prior occasion, that would have little value in proving that she did not share control of the cache of seized drugs or that she did not intend to traffick them. *Cf. Morrison*, 991 F.2d at 113–14 (conviction for possession

with intent to distribute upheld even though the defendant had specifically refused to sell drugs just prior to execution of the warrant). Therefore, it would be within the district court's discretion to exclude such evidence as having too little probative value to justify the expenditure of trial time. *See* SCRA 1986, 11–403 (Repl.1994).

Moreover, the confidential informant was not the only route available for Defendant to explore whether Gomez alone was actually dealing drugs. The information that Defendant sought from the informant presumably could have been offered through other witnesses, including Alcorta and Chavez, who were present when the officers arrived at Defendant's home with a search warrant. Gomez, too, was a potential witness.

■ On this evidence, the district judge could rationally decide that (1) the weight of the evidence would be minimal in light of the strong public policy favoring confidentiality of the identity of informants, and (2) Defendant was not overly handicapped in presenting her defense, because Alcorta, Chavez, and Gomez could presumably provide the same sort of exculpatory testimony as the informer could. Thus, the district court did not abuse its discretion in refusing Defendant's request for an in camera hearing on the identity of the confidential informant, and properly denied Defendant's motion under SCRA 11–510(C)(2) (testimony on merits).

■ Defendant also contends that the district court erred in denying her motion or failing to hold an in camera hearing to the extent that the motion sought disclosure under SCRA 11–510(C)(3). Defendant appears to claim that, because she has a right to challenge the truthfulness of statements in the affidavit under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), an in camera hearing must be held in any case involving an informant in which she announces that she wishes to make such a challenge. *Franks* suggests the contrary. *See id.* at 155–56, 98 S.Ct. at 2676. Moreover, no legal authority is cited for that proposition, and accordingly, we will not entertain it. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984).

### III. THE TYPOGRAPHICAL ERROR DID NOT RENDER THE SEARCH WARRANT INVALID.

The affidavit supporting the search warrant indicated that the confidential informant had witnessed a drug transaction at Defendant's Silver City residence between January 5 and January 8, 1992. However, the affidavit was subscribed and sworn on January 8, 1993. The search warrant was also dated January 8, 1993.

Prior to trial, Defendant moved to suppress the search warrant on the ground that it was issued without probable cause. At the hearing on Defendant's motion, the magistrate judge who issued the search warrant and the police officer who executed the affidavit testified that the 1992 date was a typographical error. The magistrate judge explained the error as a natural mental lapse in early January:

> You know I'd been writing 1992 for a year and it just blended in to what I was reading. I was trying to read through the entire thing and I didn't notice that that was a two instead of a three.

He also testified that he understood the information to have been obtained on the day the warrant was issued, and that "for a warrant to be of any value at all," it must be no more than seven, and usually only three to four, days old. The magistrate judge further testified that there was "no way" he would have issued a warrant based on one-year-old information.

Defendant nonetheless persists in arguing that "[t]he affidavit in support of the search warrant was facially invalid because the information contained in the warrant was stale, thus failing to provide probable cause." Defendant acknowledges the evidence that the incorrect date was a typographical error, but argues that the magistrate judge was not neutral because he was not aware of the error at the time the affidavit was presented. Defendant argues that the search warrant was, therefore, facially invalid and stale.

Our Supreme Court has expressly rejected "unthinking rigidity or overly technical application" when reviewing search warrant affidavits for legal sufficiency. *State v. Cordova*, 109 N.M. 211, 216, 784 P.2d 30, 35 (1989). Furthermore, an affidavit supporting a search warrant is not defective due to a typographical error in the date of the alleged criminal activity where the typographical error is obvious. *State ex rel. Collins v. Superior Court*, 129 Ariz. 156, 629 P.2d 992, 994 (1981) (en banc); *cf. Stevens v. Fincher*, 52 N.M. 52, 54–55, 191 P.2d 350, 351–52 (1948) (typographical error in date of deed not controlling where filing date made error obvious). We reject Defendant's challenge to the validity of the search warrant.

### IV. IT WAS NOT INEFFECTIVE ASSISTANCE FOR DEFENSE COUNSEL TO FAIL TO RAISE A "KNOCK AND ANNOUNCE" CHALLENGE.

Defendant next argues that her counsel fell below the standard of a reasonably competent attorney "by failing to move to suppress the fruits of the search of her residence based on a violation of the knock and announce requirement." We must therefore decide whether "a reasonably competent attorney could have decided that a motion to suppress was unwarranted." *State v. Stenz*, 109 N.M. 536, 538, 787 P.2d 455, 457 (Ct. App.), *cert. denied*, 109 N.M. 562, 787 P.2d 842 (1990).

There was substantial testimony during the two pretrial hearings regarding the methods used by the police in entering the house. Gomez testified:

> There was a knock at the door, and Lisa went to go answer it, and as soon as she opened the door, Heidke walked in with his gun cocked....

Alcorta, one of the other persons present at Defendant's residence at the time of the police raid, testified:

> [Lisa] answered the door, and they knocked, and they just walked in, without a paper or anything, without a search warrant.

Finally, and perhaps more significantly, Defendant herself testified at the pretrial hearings:

> They [the officers] knocked on the door. I opened it. They had their guns drawn,

and they came in and handcuffed everybody except for myself.

There was a knock at the door. I opened the door, and [Officer] Chavez and [Officer] Heidke already had their guns out—they were standing side-by-side. And they came in, and they immediately got the guys on the floor and handcuffed them . . . .

■ The knock and announce rule serves diverse purposes: it prevents needless destruction of property; protects the sanctity of the home; and can protect both the occupants and the police from violence. *State v. Attaway*, 117 N.M. 141, 147, 870 P.2d 103, 109 (1994). Once the property owner answers the door, opens it, and sees uniformed officers, there is no need to destroy property through forced entry; the home is not defiled through a surprise assault; and the occupants will not resort to violence in the misapprehension that robbers have attacked their dwelling. Therefore, once the occupants have voluntarily opened the door to uniformed officers, the requirements of the knock and announce rule are satisfied. *See Commonwealth v. Goggin*, 412 Mass. 200, 587 N.E.2d 785, 787 (1992).

■ Based on Defendant's own testimony, it is highly unlikely that she could have prevailed on a knock and announce violation. In order to sustain an ineffective assistance of counsel claim, a defendant must show prejudice. *State v. Gonzales*, 113 N.M. 221, 229–30, 824 P.2d 1023, 1031–32 (1992). Because Defendant testified that she opened the door when the officers knocked, we cannot say that competent counsel would have been compelled to file a likely futile motion challenging the police procedure. *See Stenz*, 109 N.M. at 537–38, 787 P.2d at 456–57 (not ineffective assistance in failing to challenge warrantless search that was justified by exigent circumstances).

## V. *THERE WAS NO PROSECUTORIAL MISCONDUCT.*

Finally, Defendant raises allegations that prosecutorial misconduct deprived her of a fair trial. We again reject her arguments.

■ Initially, Defendant challenges the prosecutor's reference first in opening state-

ment, and later in the examination of Officer Heidke, as to how drugs were brought into "our community." Defense counsel did not object to either of these references at trial, and we therefore will not review such comments on appeal. *See State v. Tafoya*, 94 N.M. 762, 764, 617 P.2d 151, 153 (1980) (appellate court refused to review an allegedly improper prosecutorial statement when defendant made no timely objection).

■ Defendant also challenges the prosecutor's questioning of Officer Heidke regarding street names for controlled substances. In response to Defendant's objection at trial, the prosecutor noted that the officers would use some slang names in their testimony, so it was necessary to define those terms. While it is true that the officers did not use all of the terms set forth by Officer Heidke, they did use some of these terms. We therefore see no prosecutorial misconduct in asking Officer Heidke to define the street names. More importantly, Defendant does not explain how she was in any way prejudiced by Officer Heidke reciting the various street names for cocaine and marijuana. *See State v. Velasquez*, 99 N.M. 109, 112, 654 P.2d 562, 565 (Ct.App.) (defendant has burden to show prosecutorial misconduct was prejudicial), *cert. denied*, 99 N.M. 148, 655 P.2d 160 (1982).

The judgment below is affirmed.

IT IS SO ORDERED.

HARTZ and PICKARD, JJ., concur.