817 P.2d 1246

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Victor BECERRA, Defendant–Appellant.**

No. 12123.

Court of Appeals of New Mexico.

July 16, 1991.

Certiorari Denied Sept. 5, 1991.

Tom Udall, Atty. Gen., Patricia Gandert, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Amme M. Hogan, Asst. Appellate Defender, Santa Fe, Louis P. McDonald, Albuquerque, for defendant-appellant.

## OPINION

MINZNER, Judge.

Defendant appeals from his conviction of drug trafficking by possession with intent to distribute, contrary to NMSA 1978, Section 30–31–20(A)(3) (Repl.Pamp.1989). Defendant contends on appeal that the trial court made three errors: (1) denying defendant's motion to dismiss on grounds of a speedy trial violation, (2) denying his motion for directed verdict based on insufficient evidence, and (3) denying his motion for mistrial based on statements made by the prosecutor during closing argument. We reverse as to issue two, and therefore need not discuss issues one and three. We note, however, with respect to issue three that defendant failed to provide us with a transcript of the closing argument.

FACTS.

On information that three illegal aliens were at the Sand & Sage Motel, an Immigration and Naturalization Service (INS) agent went there to investigate. When he determined defendant had rented the room in which the illegal aliens were suspected to be, he returned to his office in order to inform the Federal Bureau of Investigation (FBI) that he was investigating the presence of illegal aliens in connection with defendant. Thereafter, two INS agents and three or four FBI agents returned to the motel.

Defendant answered the door when the INS agents came to the motel suite he had rented. The suite had a living room area, which also served as a bedroom, a second bedroom, a kitchen, and a bathroom. Defendant was wearing pants, but no shirt. Six people, including defendant, were in the main living room. There were three women, all of whom were in this country illegally. Of the three men, one was a lawful permanent resident and the other two, including defendant, were United States citizens.

Defendant's car was parked outside the motel room. One of the other men also had a vehicle, in which a child was waiting, parked outside the motel room. An INS agent testified that defendant looked apprehensive at the time he answered the door, but relaxed after the agent identified himself as an INS agent. When asked by the agents for consent to search, defendant said no. However, after defendant spoke with an unidentified attorney on the phone, he gave his consent to search.

In the second bedroom, agents found two brown paper bags containing cocaine on top of a dresser. The agents found men's and women's clothing in the dresser and closet. Defendant did not identify any of the clothing as his, nor did the agents inquire. The trial court sustained an objection to testimony from one of the INS agents to the effect that the men's clothing found in the room appeared to fit defendant. Agents also found a revolver under the mattress, and they found six rounds of ammunition in the living room/bedroom.

Several papers were introduced by the state in an effort to show that defendant resided in the motel room. Some of these papers were found on defendant's person and others were found in the motel suite. No evidence was presented that the handwriting on the stationery belonged to defendant or that the notations on the stationery related specifically to his residency at the motel. The notations were not in themselves incriminating.

The names of defendant and a woman were listed on the motel registration card.

The motel manager testified that she had previously observed defendant at the motel room, but did not know whether he was spending the night. The manager also testified that defendant paid the first week's rent, that on several other occasions the women had paid the rent, and that the women had keys. It is not clear from the record how many people the suite was designed to accommodate.

There was testimony at trial that the agents had found 55.53 grams of white powder, a little under two ounces, which tested positive for cocaine. There was also testimony from a chemist that the most typical amount tested is a gram or less.

Finally, there was testimony that the three women were released and given temporary authority to remain in this country. They were not seen again.

DISCUSSION.

The jury was instructed only on the offense of trafficking cocaine in violation of Section 30–31–20. The record indicates that neither the state nor defendant requested that the jury be instructed on any lesser-included offense.

■ To establish defendant's guilt of trafficking cocaine in violation of Section 30–31–20, the state had to prove that defendant had cocaine in his possession, he knew or believed it was cocaine, he intended to transfer it to another, and he committed the offense within New Mexico on or about the alleged date. *State v. Muniz*, 110 N.M. 799, 800 P.2d 734 (Ct.App.1990). Defendant has argued on appeal that there was insufficient evidence to show that he was in possession of the cocaine. We also address the question of whether there was sufficient evidence of intent to distribute, although defendant does not appear to specifically challenge that element of the crime. *Cf. State v. Doe*, 92 N.M. 100, 583 P.2d 464 (1978) (although sufficiency of evidence is not challenged in trial court nor raised on appeal, court may consider question if it constitutes fundamental error). Although we discuss the possession ele-

ment, we base our decision on the failure of proof to support a finding of intent to distribute.

▋ In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict below, resolving all conflicts and inferences in favor of the verdict. *See State v. Doe*, 103 N.M. 178, 704 P.2d 432 (Ct.App.1984); *State v. Anaya*, 89 N.M. 302, 551 P.2d 992 (Ct.App.1976). The standard of review is whether substantial evidence permits a rational trier of fact to find beyond a reasonable doubt every element essential to defendant's conviction. *See State v. Donaldson*, 100 N.M. 111, 666 P.2d 1258 (Ct.App.1983). We first discuss the evidence as to possession.

POSSESSION.

▋ In the present case, defendant did not have actual physical possession of the cocaine. The jury was instructed on constructive possession. *See* SCRA 1986, 14–130; *State v. Herrera*, 90 N.M. 306, 563 P.2d 100 (Ct.App.1977). Constructive possession requires evidence of knowledge and control; a person can be said to be in constructive possession of a controlled substance when he or she is aware of its presence and has control over it. UJI 14–130; *see also State v. Doe*, 103 N.M. 178, 704 P.2d 432 (Ct.App.1984); *State v. Herrera.* Proof of constructive possession can be established by evidence of defendant's conduct and actions, as well as by circumstantial evidence that connects defendant to the crime. *See State v. Brietag*, 108 N.M. 368, 772 P.2d 898 (Ct.App.1989); *State v. Bauske*, 86 N.M. 484, 525 P.2d 411 (Ct.App.1974); *cf. United States v. Manzella*, 791 F.2d 1263 (7th Cir.1986) (association with those who possess drugs is not sufficient to support a conviction for possession; question is whether the defendant had a recognized authority to possess the drugs); *see generally* Annot., *Drug Abuse: What Constitutes Illegal Constructive Possession Under 21 USCS § 841(a)(1), Prohibit-*

*ing Possession of a Controlled Substance with Intent to Manufacture, Distribute, or Dispense the Same*, 87 A.L.R.Fed. 309 (1988).

▋ In the present case, defendant was not in exclusive possession of the motel room. While knowledge of the presence of drugs may be inferred where exclusive possession of the premises is shown, where exclusive possession is not shown, additional evidence is required to support such an inference. *See State v. Bowers*, 87 N.M. 74, 529 P.2d 300 (Ct.App.1974); *see generally* Annot., *Conviction of Possession of Illicit Drugs Found in Premises of Which Defendant Was in Nonexclusive Possession*, 56 A.L.R.3d 948 (1974); *cf. United States v. Cardenas*, 748 F.2d 1015 (5th Cir.1984) (some nexus between the accused and the prohibited substance must be established; here the evidence supported a finding that the defendant, who was present in a room in which drug paraphernalia was in plain view and drugs were in a central location, was in constructive possession of the drugs).

▋ The evidence in this case is sufficient to sustain a finding that defendant "controlled" the motel suite. The room was registered in his name and he paid the rent for the initial week. Although the women occasionally came to the office to make some daily payments, defendant apparently did that more frequently, or at least as often, as the women. His dominance of the rental is established not only by the registration and the payment, but also by the fact that the women were illegal aliens who had been present in the country only a short time. (The evidence on this score was essentially hearsay, but, perhaps for tactical reasons, defendant did not object.) It is a natural inference that the women were under his care and protection.

In addition, the discussion regarding the consent to search established that he was the person in control. Even after the three women said that they did not object to the

search, defendant expressed an objection. Later, he gave his consent, which was dispositive (no one else, including the other two males present, expressed an objection).

Finally, there was evidence of defendant's occupancy of the room. The address on the registration slip was the address of a nearby bar, from which one might conclude that defendant really had no other living arrangement. In addition, defendant was shirtless when he greeted the officers and the room (indeed, the room containing the cocaine) contained men's clothing.

Nevertheless, control of the premises on which contraband is found is not sufficient to support a determination of criminal liability. There must be knowledge of the presence of the contraband, and there must be evidence sufficient to support an inference of control of the contraband.

With respect to defendant's knowledge of the presence of the cocaine, there was evidence of his expression of relief when the officers at the door identified themselves as being from the INS. Given that the women were unlawfully in the country, he would know that he was facing a serious criminal charge. One could make the very reasonable inference that the expression of relief was that these were not officers who were interested in even more serious offenses. In addition, his control of the premises and the location of the two bags on top of the dresser supports an inference of knowledge of the presence of the bags. We think the jury was entitled to infer that defendant knew the bags contained contraband.

The final inquiry, however, is whether these facts are legally sufficient to support a finding of possession for purposes of criminal liability. In *Brietag*, we suggested that the defendant's absence at the time of the search was a significant factor in our conclusion that the state had failed to prove possession with intent to distribute, on the basis of his status as lessee and the presence of some items belonging to him in the house where contraband was found.

Here, defendant's presence at the time of the search is an additional factor to be considered. Nevertheless, we are troubled by the fact that there were so many people other than defendant present in the suite and so little evidence connecting him to the room where the cocaine was found. Unlike *Brietag*, the room in which the contraband was found contained no other evidence tending to indicate defendant had occupied that room. Although defendant was shirtless and men's clothing was found in the second bedroom, the state did not succeed in establishing that the men's clothing found belonged to defendant. For purposes of this appeal, however, we may assume without deciding that there was sufficient evidence to support an inference of control and thus a finding of constructive possession.

It is clear that the conviction cannot be sustained on proof of illegal possession alone. *State v. Moreno*, 69 N.M. 113, 364 P.2d 594 (1961). We are persuaded that there is insufficient evidence to support a finding of intent to distribute. Consequently, our discussion of the evidence of intent to distribute is dispositive of the appeal.

INTENT TO DISTRIBUTE.

■ Intent to distribute may be proved by inference from the surrounding facts and circumstances. *State v. Muniz.* In some cases, the quantity recovered is sufficient to support an inference of intent to distribute. However, in this case, where there was no evidence of the concentration of the drug, and no evidence of how long it would normally take a single drug user to consume a given quantity, the weight of the amount recovered could not in itself enable a fact finder to conclude, beyond a reasonable doubt, that defendant intended to distribute the substance.

We do not believe that a jury could use "common knowledge" to determine if the amount was too much for personal use (as it might with respect to liquor or cigarettes). The only expert testimony relating

to quantity was the chemist's testimony that the great majority of samples he receives are of much less quantity than what he was provided this time. Given the expert's lack of personal knowledge concerning the circumstances in which cocaine he examines has been seized (and the fact that he was not permitted to testify on that subject), we cannot see how one can draw an inference—particularly an inference beyond a reasonable doubt—that the quantity here was more than for personal use. In *Muniz*, by comparison, the defendant had cocaine on his person when he was arrested on the street. The cocaine was in three separate plastic baggies, and there was testimony that this was how cocaine was packaged for sale. When Muniz's home was searched, police found fourteen baggies of marijuana inside a larger baggie. There was testimony that this was consistent with the way in which marijuana was usually sold. More importantly, Muniz admitted to police officers that he distributed controlled substances. This case is clearly distinguishable.

CONCLUSION.

We hold that there was insufficient evidence to support a conviction for trafficking, because there was no evidence to support an inference of defendant's intent to distribute. Therefore, we reverse and remand the cause with instructions to dismiss the charge of possession with intent to traffick.

IT IS SO ORDERED.

BIVINS, J., concurs.

HARTZ, J., specially concurring.

HARTZ, Judge (specially concurring).

I join in the portion of Judge Minzner's opinion holding that there was insufficient evidence to establish intent to distribute.