This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

 Plaintiff-Appellee,

v. **NO. 28,527**

**EVENTYR SEGURA,**

 Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Ross C. Sanchez, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Margaret E. McLean, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Carlos Ruiz de la Torre, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**WECHSLER, Judge.**

Defendant, Eventyr Segura, appeals her convictions for trafficking by possession with intent to distribute methamphetamine and heroin and possession of drug paraphernalia, contrary to NMSA 1978, Sections 30-31-20(A) (2006) and 30-31-25.1(A) (2001). Defendant argues that (1) the district court erred in denying her *Daubert* motion to exclude the State's expert testimony of Officer Andrea Taylor and Officer Herman Martinez, who opined that the quantity of drugs possessed by Defendant were consistent with drug trafficking, (2) there was insufficient evidence to support Defendant's convictions, and (3) her convictions should be reversed due to ineffective assistance of counsel. We affirm.

**BACKGROUND**

Defendant was arrested for trafficking methamphetamine and heroin by possession with intent to distribute, possessing drug paraphernalia, and tampering with evidence. Prior to the arrest, a confidential informant made three drug purchases from two different individuals at a residence in Albuquerque. A search warrant was issued and executed on the residence where the drug sales occurred. Defendant and three other individuals were found inside the residence at the time of the search. Officer Martinez found a plastic bag on the floor of a bedroom that was later determined to contain 1.45 grams of heroin. Defendant told Officer Martinez that the plastic bag belonged to her, that she had thrown it on the floor, and that she placed $400 of cash

under a bed.  Defendant also told Officer Martinez that a purse containing a digital scale and plastic jewelry bags belonged to her.  Officer Holly Stephenson subsequently searched Defendant and found  two plastic bags containing 3.5 grams of methamphetamine, and Defendant admitted that the substance was methamphetamine and that it belonged to her.  Officer Martinez then placed Defendant under arrest.

Defendant filed a pre-trial motion to exclude the testimony of the State's proposed expert on narcotics trafficking, Officer Taylor, who opined that possession of 1.45 grams of heroin and 3.5 grams of methamphetamine was consistent with drug trafficking as opposed to personal use.  The district court denied the motion, finding that the testimony was not scientific in nature and instead was based on Officer Taylor's "'specialized knowledge and based on her technical knowledge.'"

In addition to Officer Taylor's testimony, Officer Martinez testified to "essentially the same opinions that Officer Taylor testified to."  Indeed, Officer Martinez testified that "based on the amount of heroin found within the room that she indicated was hers and the methamphetamine found on her person by Officer Stephenson, along with the packaging material and scale, I determined based on my training and experience that that was far in excess of user amounts and was typical of low to midlevel dealer."

**EXPERT TESTIMONY**

Defendant argues that Officer Taylor was not qualified as an expert witness under Rule 11-702 NMRA because she lacked experience in observing purchase habits of drug users who live in rural areas with no mode of transportation, that she lacked experience to state opinions regarding to purity or concentration levels of drugs, and that she lacked sufficient training and experience as a narcotics detective to offer the testimony.

We review the admission of evidence for abuse of discretion. *State v. Flores*, 2010-NMSC-002, ¶ 25, 147 N.M. 542, 226 P.3d 641. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted).

Rule 11-702 states that "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise." Thus, Rule 11-702 provides three prerequisites for admissibility: (1) experts must be qualified; (2) their testimony must assist the trier of fact; and (3) their testimony must be limited to the

4

area of scientific, technical, or other specialized knowledge in which they are qualified. *State v. Alberico*, 116 N.M. 156, 166, 861 P.2d 192, 202 (1993).

With regard to her qualifications, Officer Taylor testified that she was a detective with the Bernalillo County Sheriff's Department and had been assigned to the narcotics unit for three years. Prior to joining the narcotics division, she worked in the field services division, which involved "calls for service also traffic enforcements and proactive community policing." In this capacity, she estimated that she made 75 to 100 narcotic related arrests, half that were for possession offenses and half that were for trafficking offenses. She testified that she has logged 360 hours of "advanced narcotics training," including training that deals with "typical quantit[ies] of narcotics." In addition, she had taught classes on narcotics at the regional sheriff's academy, including training on common practices of drug traffickers and recognizing "user quantity" as opposed to quantities consistent with trafficking. She further testified that she was versed in determining user quantities versus trafficking quantities for all drugs, including heroin and methamphetamine, and that, in addition to her training, she gained this expertise from experience. Based on this testimony, the district court determined that Officer Taylor was qualified as an expert based on her "specialized knowledge and based on her technical knowledge." Considering these qualifications, we cannot say that the district court abused its discretion in

5

finding that Officer Taylor was qualified as an expert on narcotics trafficking. *See State v. Torrez*, 2009-NMSC-029, ¶¶ 16-18, 146 N.M. 331, 210 P.3d 228 (upholding expert testimony on gang culture and gang-related law enforcement from a detective based on his experience as an officer in gang units, his experience teaching other law enforcement personnel about gang culture and investigation, and his authoring of training programs on gang culture).

Further, Defendant argues that, even assuming Officer Taylor was qualified to testify about drug quantities consistent with personal use versus quantities consistent with trafficking in Albuquerque, she was still unqualified in the present case because she had no experience or knowledge regarding individuals such as Defendant, who lived in a rural area, did not drive, and thus did not have the means to travel regularly to Albuquerque to purchase drugs. However, even assuming that Defendant is correct in asserting that Officer Taylor had limited experience and knowledge with individuals with characteristics identical to Defendant, we view this limitation of her experience as bearing on the weight of the testimony as opposed to its admissibility. *See id.* ¶ 18 (noting that after determining that witness had sufficient qualifications as an expert on gang culture and behavior of gang members, any further "perceived deficiencies in his qualifications were relevant to the weight accorded by the jury . . . and not to the testimony's admissibility" and that the jury was free to weigh every

aspect of the expert's qualifications (internal quotation marks and citation omitted)).

Defendant additionally argues that Officer Taylor's opinion and theories underlying her testimony are unreliable because they are not subject to peer review, there has been no suitable substance abuse education or publication review, there is no data to corroborate the potential rate of error, and there is no technique to prove them. Defendant maintains that Officer Taylor's testimony therefore fails the requisite reliability assurances of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-94 (1993) (adopting non-exclusive four-factor test in determining the reliability of testimony based on scientific knowledge) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 158 (1999) (holding that the *Daubert* standard applies to all expert testimony, even expert testimony not based on scientific knowledge). However, Defendant concedes that New Mexico courts have not expressly adopted *Daubert* for non-scientific expert testimony. *Torrez*, 2009-NMSC-029, ¶ 21. Instead of applying *Daubert*, we must determine the "reliability of non-scientific expert testimony" by "evaluat[ing] [the] expert's personal knowledge and experience to determine whether the expert's conclusions on a given subject may be trusted." *Torrez*, 2009-NMSC-029, ¶ 21. This evaluation requires that, in addition to determining the qualifications of the expert, we must determine whether the opinions "prove what they purport to prove" by looking at the fit between the expert's

qualifications and the testimony offered. *Id.* ¶ 22. Defendant makes no argument, outside of *Daubert*-based assertions that Officer Taylor's opinions could not be trusted or were unreliable. Further, Officer Taylor's opinion that the amount of methamphetamine and heroin possessed by Defendant was consistent with drug trafficking were consistent with Officer Taylor's qualifications as an expert on narcotics trafficking and therefore "proved what it was offered to prove." *See Torrez*, 2009-NMSC-029, ¶ 23 (holding that it was permissible for an expert qualified to testify on gang behavior to testify as to his opinion on the motives of individual gang members).

Defendant similarly argues that the district court impermissibly admitted the expert testimony of Officer Martinez regarding his opinion that the quantity of drugs seized from Defendant was consistent with a low to mid-level drug trafficker as opposed to personal use. However, the State did not offer Officer Martinez as an expert witness. He was the officer who arrested Defendant and testified as a lay witness under Rule 11-701 NMRA. The State did not elicit his testimony that the amounts of heroin and methamphetamine possessed by Defendant was consistent with drug trafficking. Instead, the testimony was an unsolicited response to an appropriate question by the State as to whether Defendant was "under arrest for trafficking at that point," to which Defendant did not object. Additionally, Defense counsel acquiesced

8

to this testimony by cross-examining Officer Martinez on the subject, therefore waiving her argument on appeal. *See State v. Hill*, 2008-NMCA-117, ¶ 22, 144 N.M. 775, 192 P.3d 770 (holding that the defendant waived "any argument contesting the propriety of the admission of [witness's] testimony on appeal" by failing to object and choosing to cross-examine the witness on the topic).

**SUFFICIENCY OF THE EVIDENCE**

Defendant next argues that evidence presented by the State was insufficient as a matter of law to support Defendant's conviction for drug trafficking. We review the sufficiency of the evidence pursuant to a substantial evidence standard. *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Garcia*, 114 N.M. 269, 274, 837 P.2d 862, 867 (1992) (alteration in original) (internal quotation marks and citation omitted). This Court evaluates the sufficiency of the evidence in a criminal case by viewing the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all permissible inferences in favor of upholding the conviction, and disregarding all evidence and inferences to the contrary. *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. We will not substitute our judgment for that of the

factfinder, nor will we reweigh the evidence. *State v. Hernandez*, 115 N.M. 6, 26, 846 P.2d 312, 332 (1993).

In order to prove that Defendant was guilty of drug trafficking, the State was required to prove beyond a reasonable doubt that (1) Defendant possessed methamphetamine or heroin, (2) Defendant knew it was methamphetamine or heroin, and (3) Defendant intended to transfer it to another. Defendant concedes that there was sufficient evidence as to elements one and two, but argues that there was insufficient evidence as to the third element, intent to distribute.

To prove possession with intent to distribute, the State must prove specific intent, which may be inferred from the surrounding facts and circumstances. *State v. Muniz*, 110 N.M. 799, 800, 800 P.2d 734, 735 (Ct. App. 1990). Viewing the evidence in the light most favorable to the jury verdict, the circumstantial evidence supports a reasonable jury finding that Defendant had specific intent to distribute the drugs in her possession. Defendant admitted to possessing 1.5 grams of heroin and 3.5 grams of methamphetamine. Officer Taylor, the State's expert on narcotics trafficking, testified that these amounts were consistent with trafficking as opposed to personal use and that typically heroin and methamphetamine users do not use interchangeably, making it atypical that someone possessing for personal use would possess both drugs. Further, Officer Taylor testified that drug users, specifically heroin users, typically do not buy

10

drugs in large quantities and "they'll usually just have one dose, which would be a 10th of a gram or 20th of a gram." Further, Officer Martinez, the arresting officer, testified that the amount of drugs possessed by Defendant "was typical of low to midlevel dealer." In addition, Defendant's purse contained plastic jewelry bags and a digital scale, and she admitted to hiding $400 of cash under a mattress because she was scared. Both Officer Taylor and Officer Martinez testified that the plastic bags and scale were typical materials possessed by a drug trafficker.

Defendant attempts to rely on *State v. Becerra*, 112 N.M. 604, 817 P.2d 1246 (Ct. App. 1991) for the proposition that testimony on weights of seized narcotics is insufficient to infer intent to distribute. *Becerra*, however, is distinguishable. In *Becerra*, the only evidence the State presented as to intent was testimony that officers seized 55.53 grams of cocaine and testimony of a chemist that the "most typical amount tested is a gram or less." *Id.* at 606, 817 P.2d at 1248. This Court held that allowing a jury to infer intent based on the amount and "'common knowledge'" was insufficient to support a jury verdict. *Id.* at 608, 817 P.2d at 1250. In this case, the jury was presented with more evidence than the mere amount of narcotics, including the testimony of Officer Taylor and Officer Martinez that the amounts were consistent with trafficking, especially when coupled with the plastic bags and digital scale seized from Defendant's purse.

11

Defendant also argues that there was evidence contrary to the jury verdict. Specifically, Defendant argues that Officer Taylor and Officer Martinez testified that the amount of heroin seized "may" have also been consistent with personal use for a heavy user and that the amount of methamphetamine seized only had a value of $420. As a consequence, Defendant contends that it was not unreasonable for the jury to conclude that the drugs were for personal use considering that Defendant lived in a rural area and did not drive and therefore may have bought enough to last for a significant period. Further, Defendant argues that she makes a living selling jewelry and that she possessed the plastic jewelry bags and digital scale for use in her business. While Defendant's arguments, if believed, may provide a basis for acquittal, the jury was free to reject Defendant's version of the events. *See State v. Mireles*, 119 N.M. 595, 597, 893 P.2d 491, 493 (Ct. App. 1995). Having previously determined that sufficient evidence supported Defendant's convictions, we decline to reweigh the evidence and substitute our judgment for that of the factfinder. *Hernandez*, 115 N.M. at 26, 846 P.2d at 332.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

Defendant argues that her defense counsel was ineffective because counsel (1) failed to present available testimony, namely witness testimony of a police officer who saw jewelry while helping execute the search warrant that led to Defendant's arrest,

and failed to adequately investigate and photograph Defendant's storage site that would have corroborated her defense that the digital scale and plastic bags were used in her jewelry business, (2) failed to request a mistrial after becoming aware, after the verdict, that a juror had experience in jewelry making and expressed an opinion that digital scales were not used in jewelry making, (3) requested too many continuances, (4) advised her not to attend or testify at the grand jury, and (5) did not allow her to be present at pretrial hearings.

A defendant has the burden of establishing a prima facie case of ineffective assistance of counsel by showing that (1) "counsel's performance fell below that of a reasonably competent attorney," and (2) "the deficient performance prejudiced the defense." *State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729 (internal quotation marks and citation omitted). The defendant must show that, as a result of counsel's errors, the trial was not fair in that the results are not reliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In conducting our review, we strongly presume that counsel has "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. We "will not second guess the trial strategy and tactics" of counsel. *State v. Gonzales*, 113 N.M. 221, 230, 824 P.2d 1023, 1032 (1992).

With regard to Defendant's arguments that counsel requested too many

13

continuances, advised her not to testify before the grand jury, and did not allow her to be present at pretrial hearings, Defendant fails to argue how counsel's actions prejudiced her defense. Defendant therefore fails to establish a prima facie case as to those claims. *See State v. Richardson*, 114 N.M. 725, 727, 845 P.2d 819, 821 (Ct. App. 1992) ("The defendant on appeal bears the burden of proving both incompetence of his attorney and prejudice to his defense.").

As to Defendant's argument that defense counsel was ineffective because counsel failed to properly investigate the storage site and present testimony of an arresting officer that would have corroborated her defense that the plastic bags and scale in her possession were for use in her jewelry business, Defendant fails to show that the performance of counsel fell below that of a reasonably competent attorney. Defendant fails to contend that counsel was made aware of the existence of the corroborating officer or that counsel was aware of the storage site containing the jewelry. We therefore cannot say that counsel's performance was deficient. *See Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.").

14

Defendant also fails to make a showing that counsel's performance fell below that of a reasonably competent attorney by failing to request a mistrial after being told by a juror after the verdict that she had experience in jewelry making and gave an opinion, during deliberations, that digital scales are not used in jewelry making. Rule 11-606(B) NMRA states that "a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith." *See also State v. Mann*, 2002-NMSC-001, ¶ 27, 131 N.M. 459, 39 P.3d 124 (stating that "jurors may properly rely on their background, including professional and educational experience, in order to inform their deliberations"). The statement by the juror would therefore be inadmissible evidence, and absent a showing that the juror influenced deliberations, we cannot say that counsel's performance was deficient for not bringing the juror's statements to the attention of the district court and moving for a mistrial.

Although we determine that Defendant has failed to make a prima facie case of ineffective assistance of counsel, Defendant is not precluded from pursuing her ineffective assistance of counsel claim through habeas corpus proceedings. *See State v. Telles*, 1999-NMCA-013, ¶ 25, 126 N.M. 593, 973 P.2d 845.

**CONCLUSION**

     For the foregoing reasons, we affirm.

     **IT IS SO ORDERED.**

_____

**JAMES J. WECHSLER, Judge**

**I CONCUR:**

_____

**TIMOTHY L. GARCIA, Judge**

**RODERICK T. KENNEDY, Judge (Specially concurring)**

**KENNEDY, Judge (specially concurring).**

I concur, but write separately to point out the instability of the evidence for believing Defendant possessed drugs for sale. Our affirmance of the admission of testimony from Detective Martinez and Detective Taylor in this case has little to do with ensuring proper judicial concern for the reliability of their testimony. The basis for testimony resting on "specialized and technical knowledge" should not pass un-scrutinized just because it is not scientific. "Non-scientific" is not a mantra for "anything goes." Evidence should still be relevant to the case at hand. That a non-expert and an expert in this case gave virtually identical testimony on the ultimate issue—quantity of drugs supporting personal use versus possession for sale—underscores this problem and is the reason I write separately.

The testimony of Detective Martinez far exceeded the scope of lay testimony permitted under Rule 11-701. Martinez was never offered nor accepted as an expert. Yet, he testified that based on his training and experience the very appearance of Defendant's packet of heroin instantly informed him that the amount in the packet was consistent with trafficking, the crime for which he arrested Defendant. The problem with Detective Martinez's testimony is evident in its self-containment. Testimony about how Martinez's "training and experience" informed this decision was never elicited to show any external information from which the officer might have a basis

to opine in support of his conclusion.

As he was cross-examined, Martinez stated that in his experience a typical heroin user would go through a gram or more of heroin a day. A readily-available Fact Sheet on Morphine and Heroin, succinctly states that "Recreationally, daily heroin doses of 5-1500 mg [0.005-1.5 g] have been reported, with an average daily dose of 300-500 mg.[0.3-0.5 g]." Fiona J. Couper & Barry K. Logan, Nat'l Highway Traffic Safety Admin., *Drugs and Human Performance Fact Sheets* 73 (June 2004).[1] That a consensus of toxicologists, Couper & Logan, *supra*, at 3, might demonstrate a range in daily dosage from one twentieth of Martinez's guess to a little more than the total amount of heroin obtained from Defendant, demonstrates the need for additional information to establish the relevance of Detective Martinez's opinion in the context of his "training and expertise". No one asked Detective Martinez to state the source of his numbers or any demonstrable basis for his opinion, nor did anyone at trial ask whether it was based upon any externally available information. Accepting such testimony without scrutiny allows for the admission of an officer's ipse dixit as seemingly expert evidence, where its admission is not otherwise warranted. Nonetheless, Martinez's testimony instructed the factfinder on the very subject the

---

[1] This document is cited only as an example of a type of information that could bear on such testimony.

18

State later required specific expertise in the form of Detective Taylor's testimony. Both sides and the bench in this case allowed Martinez to proceed without objection or judicial intervention.

The State next created a smoke-screen of qualifications for Detective Taylor, most of which described her education in fields unrelated to her actual testimony, namely that she had an opinion about how to assess if evidence of items possessed by a subject at the time of their arrest support a conclusion that a person is trafficking in drugs. Taylor has learned to cook methamphetamine, to run confidential informants, to have a consensual encounter, to set up investigations in hotels, to deal with the life changes occasioned by going undercover, to "sit still in your car for six hours at a time," and to shoot in tactical situations. The district judge finally cut this carousel of qualifications short, telling the prosecutor that the State was "going far beyond what is necessary for [her] to be an expert in this case."

While on the stand, Taylor apparently found residue of something on the scale taken from Defendant, unlike Detective Martinez who said he had never looked. Without saying how she knew, Taylor testified that "packaging which is commonly used for jewelry is more commonly used for packaging narcotics after it's weighed out." Yet, the size and number of bags taken from Defendant were different than her recollection, and there was no residue on the baggies. Moreover, Detective Taylor,

testifying as an "expert," stated that the user who does a 10th of a gram of heroin in the morning and a 20th of a gram in the evening, has ingested a 30th of a gram of heroin for the day. In addition, she blithely stated that a 20th of a gram is double a 10th of a gram. All of these numbers are at great variance with Detective Martinez's "gram a day" opinion, as well as arithmetic principles.

*State v. Torrez* invites no external controls or judicial scrutiny to be imposed on the information coming out of the experiential expert's mouth and glorifies ipse dixit as expert opinion. 2009-NMSC-029, ¶ 21. This is dangerous and encourages what may amount to an excuse for judges to abdicate assessing the overall relevance and reliability of testimony that is presented to a jury. If our Supreme Court does not directly instruct us to apply predictable objective methods of evaluation to the proffers of non-scientific testimony, judges should nonetheless not be absolved from guarding against testimony and witnesses who would overly tax the factfinder's credulity. *See State v. Torres*, 1999-NMSC-010, ¶¶ 43-44, 127 N.M. 20, 976 P.2d 20 (stating that criteria similar to those employed by *Daubert*, 509 U.S. at 579, would not be employed in New Mexico to evaluate non-scientific evidence).

I concur in the majority's opinion because it is not our job on appeal to quibble with the weight of the evidence, particularly in the absence of anyone's quibble at trial. Yet, I write separately to iterate the problem with experiential evidence

presented in this case. If Officer Martinez testified to his opinions as a lay witness, his testimony must be reasonably based on his perceptions, and that opinion must be one within the ken of the lay juror. If Officer Martinez testifies to the same thing as the expert Officer Taylor, either Officer Taylor is not an expert or Officer Martinez should have been. Both should have had to demonstrate that their experience had some basis in objective information received in their training. In the passive exonerative tense, "mistakes were made." However, having reviewed the evidence, I cannot say that the mistakes resulted in a conviction that is unsafe—hence, my concurrence.

_____

**RODERICK T. KENNEDY, Judge**