This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40210**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ALEJANDRO AZAMAR-NOLASCO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF COLFAX COUNTY**
**Emilio J. Chavez, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Michael J. Thomas, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**IVES, Judge.**

**{1}** After a jury trial, Defendant Alejandro Azamar-Nolasco was convicted of two counts of possession of a deadly weapon by a prisoner, contrary to NMSA 1978, Section 30-22-16 (1986) and tampering with evidence, contrary to NMSA 1978, Section 30-22-5 (2003). On appeal, Defendant argues that (1) insufficient evidence supports the convictions; (2) double jeopardy principles prohibit him from being convicted of two counts of possession of a deadly weapon by a prisoner, and from being convicted of

possession of a deadly weapon by a prisoner after receiving administrative punishment for the same conduct; and (3) the failure to provide a special verdict form for tampering with evidence resulted in fundamental error. We agree that Defendant's double jeopardy rights were violated when he was convicted of two counts of possession and we therefore reverse and remand for one of the convictions to be vacated. We affirm in all other respects.

## DISCUSSION

### I.      Sufficient Evidence Supports Defendant's Convictions

**{2}**      Defendant argues that the State failed to present sufficient evidence to sustain his two convictions for possession of a deadly weapon and his conviction for tampering with evidence. Deferring to the jury in the manner required by our established standard of review, *see State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409, we disagree.

### A.      Possession of a Deadly Weapon

**{3}**      Defendant was charged with two counts of possession of a deadly weapon by a prisoner for a razor and a "shank"[1] that were found in his cell but not on his person. The State relied on a theory of constructive possession, which, under the given jury instructions, required the State to prove that Defendant knew what the objects were and exercised control over them. *See id.* ("The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." (citation omitted) (text only)). To conclude that evidence of constructive possession suffices, we "must be able to articulate a reasonable analysis that the fact-finder might have used to determine knowledge and control." *State v. Garcia*, 2005-NMSC-017, ¶ 13, 138 N.M. 1, 116 P.3d 72 (citation omitted) (text only). "[K]nowledge of the presence of [prohibited items] may be inferred" where an individual has "exclusive possession" of an area. *State v. Becerra*, 1991-NMCA-090, ¶ 14, 112 N.M. 604, 817 P.2d 1246; *see, e.g.*, *State v. Montoya*, 1973-NMCA-060, ¶ 5, 85 N.M. 126, 506 P.2d 893 (holding that a reasonable inference can be drawn that a defendant who was in possession of a motel room for six days had knowledge of the presence of drugs in the room).

**{4}**      The State presented evidence that supported a reasonable inference that Defendant constructively possessed the two weapons. *See Montoya*, 1973-NMCA-060, ¶ 5. Lieutenant Regina Slade[2] and Officer Brianne Hernandez testified about the nature of the cells at Vigil Maldonado Detention Center (VMDC). Lieutenant Slade testified that Defendant was held in a single-occupancy cell and that the razor and shank were found within that cell. The State also presented evidence that it was VMDC's standard procedure to thoroughly search a cell and remove any contraband from that cell before housing a new person there. Finally, the State called DNA expert Samantha Rynas, who testified that biological material found on the shank in the toilet matched

---

[1]Here, a "shank" was described by the State as "an instrument that is made from whatever someone can find that is incarcerated to use as a weapon, as a cutting or stabbing instrument."
[2]Regina Slade was a Sergeant at the time of the incident but is now an Operational Lieutenant.

Defendant's DNA. Viewing this evidence in the light most favorable to the guilty verdict, *see Holt*, 2016-NMSC-011, ¶ 20, a rational juror could find that Defendant had exclusive control over his cell and therefore had constructive possession over the items found during the search of his cell.

**{5}** Defendant argues that the State failed to establish exclusive control because there was evidence that "the items were found in a cell where guards and other inmates routinely entered" and because there was no evidence that Defendant's cell was searched prior to his placement. However, "[c]ontrary evidence supporting acquittal does not provide a basis for reversal." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. We therefore hold that there was sufficient evidence to support Defendant's convictions for possession of a deadly weapon by a prisoner.

## B.      Tampering With Evidence

**{6}** We also conclude the State presented sufficient evidence to satisfy the elements of tampering with evidence as set forth in the jury instruction: (1) "[D]efendant hid or placed a sharp metal object, or a shank," and (2) "[D]efendant intended to prevent the apprehension, prosecution, or conviction of himself for the crime[] of [p]ossession of a [d]eadly [w]eapon by a [p]risoner."

**{7}** As to the first element, Lieutenant Slade testified that individuals were not allowed to possess weapons in their cells and that those held at the facility were made aware that they were not allowed to have these items. Further, as discussed previously, testimony was elicited from VMDC employees about the standard booking procedure at the jail prior to assignment of a cell, including a thorough search of the cell, and the removal of contraband if found during the preassignment search. The jury was free to weigh this evidence as it saw fit, *see State v. Pitner*, 2016-NMCA-102, ¶ 6, 385 P.3d 665, and infer that standard booking procedures were followed, contraband was removed prior to Defendant's placement, and the shank was therefore placed in the toilet by Defendant.

**{8}** Turning to the second element—intent to tamper—we conclude that the State's circumstantial evidence sufficed. *See State v. Telles*, 2019-NMCA-039, ¶ 21, 446 P.3d 1194 ("Intent to tamper with evidence can be inferred from circumstantial evidence."). The State presented evidence that the shank was found in a small hole in Defendant's toilet and that employees needed to use a wire to remove it from the hole. Viewing this evidence in the light most favorable to the verdict, *see Holt*, 2016-NMSC-011, ¶ 20, it supported a reasonable inference by the jury that the discovery of the shank—not in plain view, but inside the toilet—was evidence of Defendant's desire to hide the prohibited item and prevent his apprehension, prosecution, or conviction for possession of a deadly weapon. We therefore hold that there was sufficient evidence to support Defendant's conviction for tampering with evidence.

## II.      Double Jeopardy

**{9}** Defendant argues that his double jeopardy rights were violated when (1) he was convicted of two counts of possession of a weapon by a prisoner, and (2) he was administratively punished at VMDC for possession and subsequently tried in a criminal proceeding. We agree with Defendant's first argument but disagree with his second.

## A. Two Convictions for Possession of a Deadly Weapon

**{10}** We review Defendant's double jeopardy claims de novo. *See State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. In unit of prosecution cases—when a person is convicted of multiple violations of the same statute—we ask "whether the [L]egislature intended punishment for the entire course of conduct or for each discrete act." *Swafford v. State*, 1991-NMSC-043, ¶ 8, 112 N.M. 3, 810 P.2d 1223. To discern legislative intent, we apply a two-part test. *See State v. Bernard*, 2015-NMCA-089, ¶ 17, 355 P.3d 831. First, "we look to the language of the criminal statute to determine whether the Legislature has defined the unit of prosecution." *Id.* If the language of the statute is ambiguous regarding the unit of prosecution, we move to the second step and ask "whether a defendant's acts are separated by sufficient 'indicia of distinctness' to justify multiple punishments under the same statute." *Id.* (citation omitted) (text only).

**{11}** In this case, precedent resolves the first step in Defendant's favor. In *State v. Benally*, 2021-NMSC-027, ¶ 35, 493 P.3d 366, our Supreme Court concluded that the statute prohibiting possession of a deadly weapon by a prisoner, § 30-22-16, is "insurmountably ambiguous." The Court therefore applied the rule of lenity and "presume[d] that the Legislature did not intend to punish [the d]efendant separately for each weapon possessed, unless [the] possession of each weapon could in some way be considered distinct." *Benally*, 2021-NMSC-027, ¶ 36.

**{12}** Turning to the second step, *see Bernard*, 2015-NMCA-089, ¶ 17, we consider four factors to determine whether there were sufficient indicia of distinctness: "(1) the relative timing of [the d]efendant's gaining possession of the two weapons, (2) the spacing between locations of the weapons [the d]efendant possessed, (3) the qualities or nature of the weapons themselves, and (4) the results of [the d]efendant's conduct." *Benally*, 2021-NMSC-027, ¶ 37.

**{13}** First, the relative timing of Defendant's gaining possession of the razor and the shank does not suffice to separate the two acts. In *Benally,* our Supreme Court rejected the State's speculation about when the defendant acquired the two weapons, noting that "the [s]tate [did] not cite any evidence that show[ed] either how or when [the d]efendant acquired each weapon." *Id.* ¶ 38. Here, Defendant argues that this case and *Benally* are analogous and that the State did not elicit testimony about when either of the weapons at issue were acquired by Defendant. We agree with Defendant—and the State concedes—that no evidence was presented about when the weapons were obtained or for how long either of the weapons were in Defendant's cell.

**{14}** Moving to the second factor in *Benally*—the "spacing" between the two items—Defendant argues that "the weapons were found in different places in [D]efendant's

area, but during the same search" and that the items must have been in close proximity because they were found within a single jail cell. In *Benally*, "the weapons were found in different places in [the d]efendant's bunk area, . . . within an arm's-length of the other" and "both were found during the same search." 2021-NMSC-027, ¶ 39 (internal quotation marks and citation omitted). The Court held that "[t]his indicium [did] not distinguish [the d]efendant's conduct." *Id.* Here, the razor and shank were both found in Defendant's single occupancy cell at VMDC. Although the items were found in different areas of the cell, that spacing was insufficient in *Benally* and, for similar reasons, is insufficient here. *Id.* Additionally, while the shank was found at a slightly later time, it was during the continuation of the same search by Lieutenant Slade and Deputy Trubert Flowers. We therefore conclude that here, as in *Benally*, the spacing between the two items does not suffice to separate the acts of possession.

{15}   The State argues that evidence of Defendant "fidgeting with his waistband" outside of the cell is an indication of "sufficient separation by physical 'spacing' between" the razor in his cell and the shank outside his cell. The State contends that "[t]he record supports a conclusion that Defendant used one of the shanks in one cell [in an attack on another inmate] while at least one other weapon, the razor, was in his own, adjacent cell." We are not persuaded that the record supports this conclusion in light of Defendant's acquittal for aggravated battery. Further, the State seemingly used the placement of the shank *inside* of Defendant's cell to prove constructive possession at trial, suggesting that the jury implicitly found that Defendant possessed the shank in his cell. Now, on appeal, the State argues that possession *outside* of the cell was also proven by testimony about Defendant holding his waistband. We do not accept the State's parsing of the facts on appeal to avoid a double jeopardy violation. *See State v. Reed*, 2022-NMCA-025, ¶ 27, 510 P.3d 1261 ("The [s]tate cannot wait for an appeal to adequately separate [the d]efendant's conduct to support each conviction; rather, the [s]tate must do this work below to ensure that distinct conduct supports each charge tried.").

{16}   The third factor—the "nature" of the razor and the shank—also falls short of establishing distinct conduct. Defendant argues that, like in *Benally*, the two items at issue were "more similar than different." 2021-NMSC-027, ¶ 40 (citation omitted) (text only). We agree. In *Benally*, our Supreme Court reasoned that "[u]nder [NMSA 1978,] Section 30-1-12(B) [(1963)], both weapons fit the definition of 'deadly weapon' and had a similar functionality as being weapons 'with which dangerous cuts can be given, or with which dangerous thrusts can be inflicted.'" 2021-NMSC-027, ¶ 40. The Court therefore concluded that "the minor differences in functionality between the two prison-made weapons possessed by [the d]efendant [did] not justify convicting him of separate counts under Section 30-22-16." 2021-NMSC-027, ¶ 40. (internal quotation marks and citation omitted). The same logic applies here: Even if there were minor differences in functionality between the razor and the shank, both are "weapons with which dangerous wounds can be inflicted." Section 30-1-12(B).

{17}   Finally, we consider the "result" of Defendant's possession of the two prohibited items. *See Benally*, 2021-NMSC-027, ¶ 41. Defendant argues that, like in *Benally*, "the

only 'result' of the possession was the completed act of possession." The State argues that "the result of Defendant's conduct was an actual 'distinct decrease in prison safety' as demonstrated by an undisputed attack on another inmate.'" The State contends that "[t]he evidence objectively supports, for purposes of the analysis here, that Defendant attacked another inmate in an adjacent cell" using a shank, and that the facts here are therefore unlike those in *Benally*, in which the threat of the weapon "was never actualized."

**{18}** We disagree with the State. Importantly, the evidence presented at trial does not "objectively support" that there was an attack on another inmate, as the State suggests, with either of the items in Defendant's cell. In fact, as previously discussed, the jury found Defendant not guilty of aggravated battery. Because the State failed to prove aggravated battery, the only result of Defendant's conduct supported by the record was the completed act of possession of the weapons.

**{19}** In *Benally*, our Supreme Court "agree[d] that the Legislature may have intended to authorize multiple punishments when a defendant's possession of a deadly weapon had either the objective or result of a distinct decrease in prison safety." 2021-NMSC-027, ¶ 42. The Court explained that there may be some circumstances in which "an inmate who is armed with multiple deadly weapons could . . . pose a distinctly greater threat to prison safety than that same inmate armed only with a single weapon." *Id.* The Court concluded, however, that "the threat posed by the two makeshift weapons . . . was never actualized, and, as such, any resultant decrease in safety [was] too amorphous and abstract to sufficiently distinguish [the d]efendant's conduct as two discrete violations." *Id.* ¶ 43. But here Defendant is not the "stockpiling" or "dual-wielding" defendant envisioned by our Supreme Court in *Benally*. *See id.* Instead, just as in *Benally*, the act of possessing two weapons in Defendant's cell did not pose a distinctly greater threat to prison safety than the possession of one weapon.

**{20}** For these reasons, we believe that Defendant's two convictions for possession of a deadly weapon by a prisoner are not separated by sufficient indicia of distinctness. We therefore hold that the convictions violate double jeopardy, and we reverse and remand for one of the convictions to be vacated. *See State v. Porter*, 2020-NMSC-020, ¶ 42, 476 P.3d 1201 (holding that if "both offenses result in the same degree of felony, the choice of which conviction to vacate lies in the sound discretion of the district court").

## B. Defendant's Double Jeopardy Rights Were Not Violated When He Was Punished Administratively and Subsequently in a Criminal Proceeding

**{21}** Double jeopardy also protects against "multiple punishments for the same offense." *State v. Montoya*, 2013-NMSC-020, ¶ 23, 306 P.3d 426 (internal quotation marks and citation omitted). Defendant argues that his double jeopardy protection against multiple punishments for the same crime was violated "when he received a disciplinary punishment including seventeen days in segregation and then again when he was convicted and sentenced to additional prison time." We disagree.

**{22}**    Administrative sanctions "do not implicate double jeopardy protections . . . and therefore those sanctions do not bar the subsequent prosecution of [the d]efendant for crimes arising out of that incident." *State v. Astorga*, 2000-NMCA-098, ¶ 8, 129 N.M. 736, 13 P.3d 468. This Court held in *Astorga* that the goal of disciplinary sanctions went more to "effective prison management and less to the goal of individual punishment," and that the State is therefore justified in addressing individual punishment in a separate criminal proceeding. *Id.* ¶ 6. Here, as in *Astorga*, Defendant was first subjected to a disciplinary sanction at VMDC and then faced criminal charges; this did not violate double jeopardy principles.

### III.    The District Court Did Not Commit Fundamental Error by Failing to Give the Jury a Special Verdict Instruction

**{23}**    Defendant argues that the district court committed fundamental error by failing to provide the jury with a special verdict form regarding the instruction for tampering with evidence. Defendant contends that because he was on trial for aggravated battery, as well as possession of a deadly weapon, the jury may have been confused about the crime to which the tampering charge pertained. Reviewing for fundamental error because the issue was not preserved, *see State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134, we conclude that no error occurred. The special verdict form Defendant argues should have been provided at trial, UJI 14-6019 NMRA, is to be used only "[i]f the defendant is charged with tampering with evidence of crimes that fit into more than one category as defined in . . . Section 30-22-5(B)." UJI 14-2241 NMRA.3 But that circumstance is not present here. Instead, the jury was explicitly instructed that the tampering charge was for possession of the shank—a second degree felony. It was not necessary to instruct the jury based on UJI 14-6019.

### CONCLUSION

**{24}**    We remand for the district court to vacate one of the convictions for possession of a deadly weapon and to resentence Defendant accordingly. We affirm in all other respects.

**{25}    IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**GERALD E. BACA, Judge**

**MICHAEL D. BUSTAMANTE, Judge,
retired, sitting by designation.**

---

3Section 30-22-5(B) details the different degrees of punishment for tampering depending on the seriousness of the underlying offense.