This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                          **NO. 32,624**

**RHONDA OSBORNE,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**William C. Birdsall, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VANZI, Judge.**

{1}     Osborne appeals her convictions for larceny and disposing of stolen property. In our notice of proposed summary disposition, we proposed to affirm.  Osborne has

filed a memorandum in opposition, which this Court has duly considered. As we do not find Osborne's arguments persuasive, we affirm.

**Due Process Right to Present a Defense**

{2}     Osborne contends that her due process right to present a defense was violated when the district court refused to permit her to introduce certain evidence that she asserts was related to her defense, including testimony by her children regarding their medical conditions and related expenses, whether money was needed for the children, and whether Osborne and her former husband Kenneth Osborne (the victim) deviated from their divorce decree. [DS 4] In our notice of proposed summary disposition, we proposed to hold that she had failed to preserve a constitutional due process argument with respect to these issues. In the alternative, we proposed to find no constitutional violation. In Osborne's memorandum in opposition, she asserts that she preserved this issue. [MIO 31-33] We will assume, without deciding, that she did so. Nevertheless, we find no error in the district court's decision.

{3}     There was no dispute that, nine years after their divorce, Osborne took approximately $220,000 from a joint bank account that had been awarded to the victim in the divorce decree. [DS 3] At the time of the decree, the account contained approximately $34,000. [MIO 3] The only real issue in the case was whether the victim had informed Osborne that she could have access to the money if she needed it for their children.

**{4}** Osborne repeatedly sought to introduce evidence regarding the victim's failures as a father, and the district court sought to limit evidence so that the trial would not turn into a trial about the divorce or about the family's subsequent relationships (or lack thereof). [RP 80] Osborne asserted that the fact that the victim was not a loving father "[went] to the heart" of her defense. [RP 80; *see also* 125-26] She asserted that she had to introduce this evidence in order to show that the victim did not care for the children and that this is why he would have offered Osborne access to the bank account. [RP 123] The district court concluded that this evidence was not relevant to the criminal charges against Osborne and that it was simply a tactic to attempt to paint the victim in an unfavorable light. [RP 124] The district court stated that the question at issue in the case was whether the victim gave Osborne permission to access the account, not why he might have done so. [RP 123]

**{5}** On appeal, Osborne contends that evidence of the children's medical conditions, of the fact that the money was needed for the children, and the fact that Osborne and the victim deviated from their divorce decree was necessary to show why she needed the money for the children. However, Osborne herself repeatedly sought rulings that would prevent her from having to testify about what she actually did with the money she took. At a pretrial hearing, when the State asked Osborne what she did with the money, she tried to invoke her Fifth Amendment right not to answer this question. [RP 15-16] When this argument was rejected by the district court, she

3

objected to the question on grounds of relevance. [RP 15-16] The district court said "[f]or right now, I'm not gonna make her answer where the money is, but the next time I may." [RP 16] As the State continued its cross-examination of Osborne, she again objected on grounds of relevance to a question about how the money had been spent. [RP 16] At that point, consistent with Osborne's objection, and at Osborne's behest, the district court ruled that the question of how Osborne had actually spent the money was not relevant. [RP 16]

{6} At a hearing two days before trial, without any discussion of its prior ruling that such matters were not relevant, the district stated that the question of what Osborne actually did with the money was germane to the case. [RP 66] Osborne did not point out that this ruling conflicted with the court's prior ruling.

{7} Then, during trial, the State asked Osborne what she did with the money. [RP 127] She responded evasively, stating that she had "spent it on [the children's] future." [RP 127] The State pointed out that this was not really an answer to the question, and the district court stated that it had ruled that Osborne should answer this question. [RP 127] The district court then asked Osborne where the money was. [RP 127] Osborne said, "I have secured it for my children. I cannot tell you. I'm sorry. I was told my name remained on that account. My children will have a future." [RP 127] The district court dismissed the jury from the courtroom. Out of the presence of the jury, Osborne urged the district court to adhere to its prior ruling that the

4

question of what Osborne had done with the money was irrelevant. [RP 127] The district court, apparently remembering the most recent pretrial conference, stated that it believed that it had ruled that if Osborne took the stand she could be asked about what she did with the money. [RP 127] Osborne pointed out that the district court had ruled otherwise at the preliminary hearing. [RP 127] The district court then reviewed its logs and concluded: "You're right; it's not relevant." [RP 127] With the jury back in the room, the State tried to ask Osborne several more questions about what had happened to the money, and Osborne objected. [RP 128] These objections were sustained, and then Osborne asked the district court to instruct the jury in order to give some explanation about these evidentiary rulings. [RP 128] Osborne asked the district court to inform the jury that certain matters were irrelevant. [RP 128] The district court did so. [RP 129] Osborne appears to have been satisfied with this instruction as she did not object or otherwise seek any further instruction on the matter. [RP 129]

{8}     As we stated in our notice of proposed summary disposition, we cannot see why Osborne should have been permitted to introduce evidence of what she might have hypothetically wanted the money for, while excluding evidence of what she actually did with it. Osborne has not provided any reasoned explanation in her memorandum in opposition, and we therefore hold that the district court did not abuse its discretion in excluding evidence of what Osborne claimed she needed the money for. To the

5

degree that the district court might have erred in concluding that what Osborne spent the money on was not relevant to her defense, such error was invited by Osborne's own repeated objections and arguments, and is therefore not a basis for claiming error on appeal. *See State v. Handa*, 120 N.M. 38, 45-46, 897 P.2d 225, 232-33 (Ct. App. 1995) (stating that "[t]o allow a defendant to invite error and to subsequently complain about that very error would subvert the orderly and equitable administration of justice," and indicating that this principle also applies to claims of fundamental error) (internal quotation marks omitted)).

{9} Furthermore, we note that although Osborne points to the evidence introduced at her sentencing hearing to suggest that she would have wanted to introduce such evidence at trial [MIO 21], it equally supports the opposite conclusion—that she did not want to the jury to know what she had done with the money. For instance, she could only account for $183,000 of the almost $220,000 that she had spent in a six-month to one-year period of time, leaving close to $37,000 unaccounted for. [RP 166, 167] $10,000 was given to neighbors. [RP 167] $3,500 was spent on a riding lawn mower. [RP 167] $5,500 was spent on bedroom furniture for the two children. [RP 167] Some of the money was spent on attorney fees. [RP 167] Some was spent to replace the carpet. [RP 167] $40,000 was spent on Osborne's hospital bills. [RP 167] While there was also evidence that some of the money was spent on computers for the children and on the children's medical bills, Osborne might reasonably have been

6

concerned that the jury would not view all of these expenditures as being necessary to secure the children's future or for the children's medical needs.

**Due Process Right to Impeach**

{10} Osborne contends that her due process rights were violated when she was not afforded the opportunity to impeach the victim's testimony at trial. [DS 4] In our notice of proposed summary disposition, we proposed to find no error. On appeal, Osborne argues that impeachment was necessary to show that the victim was not credible. [MIO 27-30] However, the question that defense counsel asked the victim was whether Osborne had ever personally contacted him to ask him to pay medical expenses. [RP 84] This was a question submitted by a juror. [RP 96] The victim answered that Osborne had not personally contacted him. [RP 84] What Osborne sought to impeach him with was a motion she had filed in the divorce case asking the district court to require him to make certain payments. [MIO 28] As this document would not have contradicted the victim's testimony that Osborne never called him personally to seek help, the district court did not abuse its discretion in refusing to allow the use of the document to impeach the victim. Furthermore, to the degree that this impeachment evidence would have been relevant to Osborne's defense that she was permitted to take, and did in fact take, the money to use for the children's needs, it was not error to exclude it for the reasons discussed with respect to the preceding issue.

**Jury Instructions**

{11}    Osborne contends that the district court erred by denying her requested jury instruction and employing a mistake-of-fact instruction.  [DS 4] In our notice of proposed summary disposition, we proposed to affirm.  With respect to Osborne's requested instruction, we proposed to conclude that the instructions given by the district court necessarily addressed the concept sought to be covered in Osborne's proposed instruction, such that it was not error to refuse the proposed instruction. *See State v. Venegas*, 96 N.M. 61, 62-63, 628 P.2d 306, 307-08 (1981) (holding that it was not reversible error to fail to give a mistake-of-fact instruction when that concept was covered by an instruction on justifiable homicide); *State v. Long*, 1996-NMCA-011, ¶¶ 15-20, 121 N.M. 333, 911 P.2d 227 (holding that it was not error to refuse an instruction that the jury should not convict the defendant of making a false statement on a tax return if it found that he believed the statements prepared by the tax preparer to be true; the elements of the offense included a requirement that the jury find that the defendant did not believe the tax return was true and correct in order to convict him; therefore, the defendant's instruction was unnecessary since "the jury was adequately instructed on the element of [the d]efendant's knowledge or belief" and the "[d]efendant's requested instruction simply repeated to the jury the idea that [the d]efendant should not be convicted if he believed his return was correct").  With respect to the mistake-of-fact instruction, we proposed to hold that its use was not

8

reversible error as it benefitted Osborne, such that she could not demonstrate prejudice by its use.

**{12}** In Osborne's memorandum in opposition, she provides no new authority or argument that would persuade this Court that the jury instructions were erroneous. [MIO 10-19] The jury instructions properly indicated that in order to find Osborne guilty, the jury had to find beyond a reasonable doubt that the victim had not given her the money, since it was required to find that the money "belong[ed] to another," that Osborne "intended to permanently deprive the owner of it," that it was "stolen," and that Osborne "knew or believed that it had been stolen." [RP 104, 106] Accordingly, we find no error.

**Motion for a Directed Verdict**

**{13}** Osborne contends that the district court improperly denied her motion for a directed verdict because there was no dispute that her name was on the account. [DS 7] In our notice of proposed summary disposition, we proposed to find no error because Osborne's argument was premised on a theory that if a person's name is listed on an account, such that the bank will permit her to withdraw money from that account, any such withdrawal is lawful. Osborne provided no authority from this or any other jurisdiction to support such a proposition, and it appeared to have been undisputed that in the divorce case, the joint account was assigned to the victim, and not to Osborne.

9

{14} In Osborne's memorandum in opposition, she argues that her motion for a directed verdict should have been granted not because her name was on the account, but because of the evidence that the victim gave her permission to access the account if she needed the money for their children. [MIO 34-37] Osborne's argument essentially asks this Court to reweigh the evidence, viewing it in the light most favorable to her, which we will not do. *See State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176 ("In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict."). There was sufficient evidence to support a conclusion that the victim had not given Osborne permission to access the account: the victim himself testified that he had not given her such permission, and the officer who interviewed Osborne testified that Osborne told the officer that she did not know about the money until she happened to go to the bank and the bank teller told her about the money and told her that she had access to it. [RP 76, 78, 82] Accordingly, the district court did not err in refusing to grant a directed verdict.

**Ineffective Assistance of Counsel**

{15} Osborne contends that her motion for a new trial should have been granted because it raised a claim of ineffective assistance of counsel. [DS 7] Osborne's motion for a new trial asserted that her trial counsel was ineffective in failing to

10

request a mistrial when the State and the district court asked Osborne what she had done with the money she had taken. [RP 153-54] In our notice of proposed summary disposition, we noted that Osborne provided no authority demonstrating that a mistrial should have been granted under the circumstances, and we therefore proposed to hold that the district court had not abused its discretion in denying the motion, as it is not ineffective assistance of counsel to fail to make a motion that lacks merit. *See State v. Chandler*, 119 N.M. 727, 735, 895 P.2d 249, 257 (Ct. App. 1995).

{16} In Osborne's memorandum in opposition, she asserts that counsel should have prepared Osborne to respond more fully to questions about what she did with the money, as counsel did at sentencing. [MIO 38] However, as discussed above, counsel may have made a reasonable strategic decision not to include such evidence at trial, as it may have been damaging to Osborne's defense. "On appeal, we will not second guess the trial strategy and tactics of the defense counsel." *Lytle v. Jordan*, 2001-NMSC-016, ¶ 43, 130 N.M. 198, 22 P.3d 666 (internal quotation marks and citation omitted). Therefore, Osborne has failed to demonstrate error on this basis on direct appeal.

{17} Accordingly, for the reasons stated in this opinion and in our notice of proposed summary disposition, we affirm.

{18} **IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**TIMOTHY L. GARCIA, Judge**